NEW YORK CENTRAL RAILROAD & another *vs.* FREDERICK AYER & another, trustees, & another.

Suffolk.   March 14, 1922. — June 28, 1922.

Present: RUGG, C.J., DE COURCY, CROSBY, & JENNEY, JJ.

*Easement. Way,* Private.

A passageway was twenty feet wide. The fee in each half of it, divided longitudinally, was owned by the owner of the adjacent land and it was provided by deed that it was "to be forever kept open for a passageway and for light and air and drainage" for the use of the owners of the respective halves, and their respective successors, heirs and assigns. *Held,* that

(1) One of the adjacent owners might surface the part of the passageway of which he owned the fee in any appropriate way so long as passage over it was left safe and convenient and adapted for the use for which it was established;

(2) The words of the deed did not mean that the material or surface of the passageway must forever be of the same material as when the easement was created;

(3) If one of the adjacent owners exercised his rights as owner of the fee to change the surface of the way or to utilize the space under its surface, he took his own risk that the passageway should be at least as safe and convenient for use by the other adjacent owner, pursuant to such owner's easement, as was the original construction, and this applied not only to initial installation but also to continued maintenance.

Upon an appeal from the final decree in a suit in equity by the owner of the fee in one half of the passageway above described against the adjacent owner, to enjoin the maintenance of alleged obstructions to the easement, it was *held,* that

(1) The maintenance of a plank walk extending about thirty feet in length adjacent to a building on the defendant's land and four and seventy-two hundredths feet wide within the passageway, flush with its surface and physically subject to traffic by teams and trucks, was not as then maintained any obstruction to the easement of the plaintiff; and the same was true of a granite curbing around a concrete sidewalk on one side of the defendant's building and of certain coal holes;

(2) The maintenance of a granite curbing around a concrete sidewalk on one side of the defendant's building, which originally was level and flush with the outer surface of the passageway but at the time of the suit was somewhat higher because the rest of the way had been washed away as a result of rain and storms, should not be enjoined: it was within the right of the owner of the fee to make such use of his fee as he desired, provided, in point of strength and general adaptability, it was reasonably safe and convenient for passage;

(3) It appearing that the land in question was in the Back Bay district in Boston and that the defendant used his land for hotel purposes, the owners of the easement of passage had no right to complain if the owner of the fee in one half of the way placed a permanent surfacing upon his part of the passageway in conformity with its original level;

(4) The maintenance of a "grating" covering part of the passageway might be enjoined, since it did not appear that it would be reasonably fit for the passage of teams;

(5) The maintenance of a certain flight of steps and area, leading from the surface of the passageway to space substantially on the level of a lower floor of the defendant's building, should not be enjoined, but that portion of the passageway occupied by the steps and their accessories should be so filled or covered and strengthened as to render those parts of the passageway substantially as firm, sound and convenient for passage on foot and by teams and trucks as it was on the day the easement was created and as reasonably usable for such passage in connection with the rest of the passageway as it was on that date, the level of said portion of the passageway to be so changed as to be made to conform substantially to the level of the passageway on that date, and all structures to be removed so far as necessary to that end.

BILL IN EQUITY, filed in the Supreme Judicial Court on March 22, 1916, and afterwards amended, by the New York Central Rail-

road Company and the Boston and Albany Railroad Company, as lessee and owner, respectively, of land abutting upon land conveyed by the Boston and Albany Railroad Company to predecessors in title of the defendants at the corner of Exeter Street and Boylston Street in Boston, against the trustees of the Ledyard Realty Trust and the executors of the will of Frederick Ayer, owners, and the Lenox Operating Company, the lessee of that property, seeking to restrain the defendants from alleged violations of the express easement described in the opinion.

The suit previously was reserved by *Carroll,* J., for determination by the full court upon the pleadings, the master's report, exceptions of the plaintiffs thereto and an interlocutory decree overruling the exceptions, and, by a rescript accompanied with a decision reported in 239 Mass. 70, this court made the order, "Decree for the plaintiff with costs in accordance with the opinion."

The suit then was heard by *Braley,* J., upon the question of a final decree following the rescript, and by his order a decree was entered ordering the defendants "to cause the removal within the time hereinafter prescribed of the following structures, appliances, and obstructions on the land by them owned in fee as such trustees, subject to an easement of passage, light, air, and drainage in favor of New York Central Railroad Company and Boston and Albany Railroad Company, respectively, and their successors in title, at the corner of Boylston and Exeter Streets in the City of Boston or on the building thereon known as the Hotel Lenox, adjacent to said passageway:

" (1) (a) that part of the ornamental cornice on the top of said building on the westerly side extending eight feet from Boylston Street which projects across the easterly side line of said passageway;

(b) that part of the ornamental cornice on the top of said building on the southerly side extending eight feet from Exeter Street which projects across the northerly side line of said passageway;

" (2)  that part of the plank walk five feet wide and about thirty feet long extending from Boylston Street to a door in said building on its westerly side which projects across the easterly side line of said passageway;

" (3)  those parts of the two conductor pipes for receiving rain

water from the roof on the westerly side of said building distant about fifty-five and eighty-five feet respectively from Boylston Street and extending from the ground upwards for about eighteen feet which project across the easterly side line of said passageway;

" (4)  the granite curb one foot wide around concrete sidewalk on the westerly side of said building;

" (5)  the coal hole with an iron cover twenty inches in diameter on the surface of and level with the concrete sidewalk on the westerly side of said building;

" (6)  that part of the exhaust steam pipe about nine inches in diameter, situated about ninety feet northerly from Boylston Street and running from a point on the outside of the westerly side of said building about two feet above the ground to the roof which projects across the easterly side line of said passageway;

" (7)  that part of the hood or covering for a hoist and ventilator about two feet by four feet and about twenty feet above the ground, over a window or opening in the westerly side of said building about one hundred and twenty feet from Boylston Street which projects across the easterly side line of said passageway;

" (8)  the hatchway about four feet square in the concrete sidewalk on the westerly side of said building;

" (9)  the flight of steps on the southerly side of said building leading from the surface downward toward the west and occupying an area ten feet long by four feet wide; the open area nine feet long by four feet wide at the foot of the stairs; the open work iron grating near the head of the stairs toward Exeter Street which covers an open area or air well four feet wide and eight feet long; the curbing or wall which runs around this area; the stairs and the area at the foot of the stairs; the iron fence or railing about twenty-two feet long set into the curbing; and two upright arched iron rods which protect the fence;

" (10)  the two covered coal holes about twenty inches in diameter distant nine and twenty-three feet respectively easterly from the southwesterly corner of said building in the concrete sidewalk on the southerly side of said building;

"(11) the curbing around the concrete sidewalk on the southerly side of said building;

"(12) those parts of the two fire-escapes on the westerly side of said building, one near Boylston Street and the other near the opposite end of said building which project across the easterly side line of said passageway —

filling or covering all excavations in such a way as to render the passageway substantially as firm, sound, and convenient for passage on foot and by teams and trucks as it was on April 18, 1899, and to cause —

"(1)   the concrete sidewalk five feet wide and about sixty-three feet long on the westerly side of the building;

"(2)   the concrete sidewalk twenty-six feet long and five feet wide on the southerly side of the building —

to be so reconstructed as to make them level with the grade of said passageway, and that the necessary work to carry out the foregoing decree be commenced on or before July 1, 1922, and continued thereafter from day to day until completed; and it is further ordered, adjudged, and decreed that James C. Ayer, Charles F. Ayer, and Frederick Ayer, Jr., trustees as aforesaid, and Lenox Operating Company and their respective executors, administrators, successors, and assigns, officers, agents, servants, and attorneys, and their respective successors in title to said land and each of them, be and they hereby are permanently and perpetually enjoined from causing or permitting hinged windows on the westerly and southerly sides of said building to swing out or project at any time across the side lines of said passageway and from causing or permitting awnings to be placed on the westerly or southerly sides of said building in such a way as to project at any time across the side lines of said passageway; and it is further ordered, adjudged, and decreed that Lenox Operating Company, its successors and assigns, officers, agents, servants, and attorneys, and its successors in title and each of them, be and they hereby are permanently and perpetually enjoined and restrained from causing or permitting baskets, milk cans, or waste material, such as ashes, garbage, and rubbish, whether in containers or otherwise, to be or remain on said passageway in such a way as to obstruct passage or create a disorderly appearance or for an unreasonable length of time; and

it is further ordered, adjudged, and decreed that the defendants are hereby directed to pay the plaintiffs costs amounting to $222.59, and that execution is to issue therefor."

The defendants appealed.

*M. M. Johnson,* for the defendants.

*C. O. Pengra,* for the plaintiffs.

RUGG, C.J. This case comes before us on appeal from a final decree after rescript accompanying the decision in 239 Mass. 70. The only question is whether the decree conforms to the principles of that opinion. The suit is in equity for the removal of obstructions interfering with a passageway twenty feet in width, of the one half of which adjacent to their land the defendants own the fee, and of the other half of which the plaintiffs own the fee, "to be forever kept open for a passageway and for light and air and drainage" for the use of the plaintiffs and of the defendants and their respective successors, heirs and assigns.

The final decree provides in great detail for the removal of certain obstructions and in the main conforms to the opinion. In some particulars it is too onerous on the defendants.

They are the owners of the fee of the strip of land ten feet in width adjacent to their main lot, being one half of the passageway. By virtue of such ownership they have the right to make any reasonable use of the land covered by that part of the passageway not inconsistent in law with the paramount easement owned by the plaintiffs. The terms of that paramount easement require them to keep their part of the passageway open above the ground. But the defendants may surface the part of the passageway of which they own the fee in any appropriate way so long as passage over it is left safe and convenient and adapted for the uses for which it was established. The words of the deed do not mean that the material or surface of the passageway must forever be of the same material as when the easement was created. Nothing is said in the deed on that subject. If the defendants exercise their right as owners of the fee to change the surface of the way or to utilize the space under its surface, they take their own risk that the passageway shall be at least as safe and convenient for use by the plaintiffs pursuant to their easement as the original construction. This applies not only to initial installation but also to continued maintenance. If

the materials are liable to deterioration, the necessary repairs or replacements rest upon the defendants, so far as these differ from the construction of the way at the time the easement of passage was created. Commonly the duty and privilege of constructing and maintaining the servient estate over which an easement exists, in such condition and repair as may be necessary for the exercise of the easement, rests upon the owner of the dominant estate. *Brown* v. *Stone,* 10 Gray, 61, 65. *Flanagan* v. *Welch,* 220 Mass. 186, 191. But the owner of the servient estate is still possessed of all the rights of an owner of the fee and his title is unaffected, except as limited by the existence of the easement in favor of the dominant estate. If he chooses for his own purposes to change the surface material, then he must as to new and different constructions himself maintain the way so as to be equally safe and suitable for passage as was the way when originally created. The test by which to determine the obligation of the defendants to remove structures constructed by them since the creation of the easement is whether such structures are inconsistent with the plaintiffs' rights for passage, light and air through the entire passageway, and drainage as defined in the earlier opinion, 239 Mass. at pages 78, 79. *Atkins* v. *Bordman,* 2 Met. 457, 467. *Codman* v. *Evans,* 5 Allen, 308. *Attorney General* v. *Williams,* 140 Mass. 329. *Kendall* v. *Hardy,* 208 Mass. 20. *Duncan* v. *Goldthwait,* 216 Mass. 402.

The objections raised by the defendants to parts of the final decree will now be taken up in order. The plank walk extending about thirty feet in length adjacent to the building on the defendants' land and four and seventy-two hundredths feet wide within the passageway, flush with its surface and physically subject to traffic by teams and trucks, is not as at present maintained any obstruction to the easement of the plaintiffs. If repaired and replaced as occasion requires from time to time, it will not be an obstruction. The same is true of the granite curbing around the concrete sidewalk on the westerly side of the defendants' building and of the coal holes.

The granite curbing around the concrete sidewalk on the southerly side of the defendants' building was originally level and flush with the other surface of the passageway, but (as found by the master) "the rest of the way has been washed away as

a result of rains and storms so that at the present time the curbing or outer edge of this walk is somewhat higher than the level of the rest of the passageway." Since this structure also was in conformity to the original grade and surface of the way, it was within the right of the owner of the fee to make such use of his fee as he desired, provided, in point of strength and general adaptability, it is reasonably safe and convenient for passage. It is the right of the owner of an easement to do any work on the surface of the way reasonably calculated to enable him to use and enjoy his right. But he has no just ground for complaint if the owner of the servient tenement makes a use of the fee reasonable in view of the nature, location and improvements of the property. In the light of the conditions under which this passageway was created, the great value of the land adjacent and in the neighborhood and the profitable uses to which it is adapted, the owners of the easement of passage have no right to complain if the owner of the fee places a permanent surfacing upon its part of the passageway in conformity with its original level. The characteristics of a remote rural path cannot be required by the owner of an easement of passage in the midst of a great city.

The master has found that the hatchway about four feet square in the concrete sidewalk on the westerly side of the defendants' lot "has a cover or grating which fits over it, and is flush with the sidewalk when closed, so that persons can walk over it. It is physically possible for teams or trucks to drive over it." It is difficult to conceive of a "grating" reasonably fit for the passage of teams. The finding is not clear on this point. It is open to the construction that the hatchway is a grating. If it is a grating or of the nature of a grating, it must be removed. Hence paragraph (8) of the decree may stand.

Paragraph (9) of the decree relates to a flight of steps and area leading from the surface of the passageway to space substantially on the level of a lower floor of the defendants' building, and orders the removal of the stairs and area and other structures. This goes beyond the rights of the plaintiffs. They are entitled to a restoration of the surface of the passageway to its level when established to be made of such material and supports as will render it substantially as firm, sound and con-

venient for passage on foot and by teams and trucks as it was on April 18, 1899, when the easement was created. *Gerrish* v. *Shattuck*, 132 Mass. 235, 239. See *Burnham* v. *Nevins*, 144 Mass. 88. The "sidewalk open-work iron grating on the grade of the walk which covers an open area or air-well four (4) feet wide and eight (8) feet long" (as found by the master) manifestly cannot be appropriate for the passage of teams.

It follows that the final decree must be modified in accordance with rescript and as thus modified affirmed with costs.

*So ordered.**

---

* The rescript which the foregoing opinion accompanied directed the entry of the following order:

"Paragraphs numbered (2), (4), (5), (10) and (11) to be stricken from the decree; paragraph (9) modified so as to read as follows: '(9) the iron fence or railing about 22 ft. long set into the curbing; and two upright arched iron rods which protect the fence, both in connection with the flight of steps leading from the surface downward and with open area or areas on the southerly side of said building;' the words 'to cause (1) the concrete sidewalk five feet wide and about sixty three feet long on the westerly side of the building; (2) the concrete sidewalk twenty six feet long and five feet wide on the southerly side of the building — to be so reconstructed as to make them level with the grade of said passageway' stricken from the final decree, and in place thereof inserted the words 'to cause that portion of the passageway on the southerly side of said building occupied by a flight of steps leading downward, being ten feet long by four feet wide, by an open area nine feet long by four feet wide at the foot of the stairs, by the open-work iron grating near the head of the stairs toward Exeter Street covering an open area or air well four feet wide and eight feet long and the curbing or wall which runs around this area, to be filled or covered and strengthened so as to render those parts of the passageway substantially as firm, sound and convenient for passage on foot and by teams and trucks as it was on April 18, 1899, and as reasonably usable for such passage in connection with the rest of the passageway as it was on that date, the level of said portion of the passageway to be so changed as to be made to conform substantially to the level of the passageway on that date, and all structures to be removed so far as necessary to that end;' and the words 'July 1, 1922' to be stricken out and the words 'July 15, 1922' to be inserted in place thereof; and decree to be further modified so as to include the costs of this appeal; and, as thus modified, final decree affirmed.".