NEW YORK CENTRAL RAILROAD COMPANY & another *vs.*
JAMES C. AYER & others.

Suffolk.   November 18, 1924. — June 27, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Equity Jurisdiction,* To enjoin infringement of easement, Contempt.
*Easement. Way,* Private. *Equity Pleading and Practice,* Contempt
proceedings. *Contempt. Error, · Writ of.*

A writ of error does not lie to correct errors of law in a decree in equity.
*Whether* an appeal will lie from an order or a decree adjudging a party to
an action or a suit in contempt, or *whether* an exception may be taken
at the hearing of a petition for adjudication of contempt, are questions
that never have been decided in this Commonwealth, although intima-
tions are to the contrary.   Per RUGG, C.J.
A complaint for contempt for violation of an interlocutory or final decree
in equity is an incident to the principal suit, and all the papers relating
to it should be filed with the other papers in the case; it is irregular to
treat such a complaint as a distinct cause.
The amount of a fine imposed by order of the court upon a petition for an
attachment for contempt is not subject to revision.
Upon a petition by the plaintiff in a suit in equity for an attachment for
contempt on the part of the defendant in not complying with the man-
dates in a final decree directing him to remove certain obstructions to
a private way and to restore the way to a certain condition, a single
justice of this court adjudged the respondent guilty in accordance with
the petitioner's contentions and ordered him to pay a fine, but, in rul-
ings which he filed as the basis of his order, he misinterpreted the final
decree which had been entered in the suit.   The petitioner by writ of
error sought to have the contempt order revised, assigning as error
the improper rulings by the single justice and the refusal by him to
give certain requests of the petitioner for rulings.   *Held,* that on the
record the petitioner was not entitled to relief.

PETITION, filed in the Supreme Judicial Court for the
county of Suffolk on March 6, 1924, for a writ of error re-
viewing a final decree entered by order of *Crosby,* J., on
February 16, 1924, adjudging the respondents in contempt
for not complying with the mandates contained in a final
decree entered by this court on July 15, 1922, in a suit in
equity by the petitioners herein against the respondents

herein, after rescript was issued in accordance with the decision reported in 242 Mass. 69.

The errors assigned by the petitioners were to rulings of law, made by the single justice in an order for a decree but not contained in the decree, to refusals by him to give rulings asked for by the petitioners at the hearing of the petition for contempt, and to the "failure of the court to fine the defendants in error more than $150."

The answer of the respondents contained the following: "And further answering the defendants in error say that they have been found guilty of contempt in certain respects, as appears by the record and that such finding is a finding that the defendants are not guilty of the remaining charges of contempt against them, and that the plaintiffs in error being the prosecutors of said proceeding in contempt against these defendants, are not entitled to be heard upon said writ of error, and that under the facts of [*sic*] law as shown by the record the plaintiffs in error may not have or obtain the aforesaid writ of error against these defendants."

The writ of error and writ of *scire facias* issued and there were certified to the full court the final decree entered on July 15, 1922, the petition by these petitioners that the Lenox Operating Company be "attached for contempt of court" with specifications of alleged violations of the decree, the petition that the respondents herein "be attached for contempt of court," an order appointing a commissioner "under the provisions of Chancery Rules, No. 35" to take the evidence at the hearing of the petitions, a report of the evidence, abbreviated by consent of the parties and order of the court, requests by both parties for rulings at the hearing of the petitions, "findings of fact, rulings of law, and order" for a decree by *Crosby*, J.

The order for a decree was as follows: "This case came on to be heard at this sitting on the petition of the complainants that James C. Ayer, Charles F. Ayer and Frederick Ayer, Jr., be attached for contempt of court and on the further petition of the complainants that Lenox Operating Company be attached for contempt of court and was argued by counsel; and thereupon, upon consideration thereof, it

is ORDERED, ADJUDGED and DECREED that the respondents James C. Ayer, Charles F. Ayer and Frederick Ayer, Jr., are guilty of contempt of this court for failure to comply with the final decree after rescript entered July 15, 1922 and that they pay a fine of one hundred and fifty dollars ($150) for such contempt, the same to be paid to the complainants to reimburse them for their costs and expenses incurred in this proceeding, and it is further ORDERED, and ADJUDGED that the respondent Lenox Operating Company is in contempt of court and that for such contempt it pay a fine of one hundred and fifty ($150), the same to be paid to the complainants to reimburse them for their costs and expenses incurred in this proceeding."

*C. O. Pengra,* for the petitioners.

*M. M. Johnson,* for the respondents.

RUGG, C.J. This is a writ of error. It is brought to reverse a final decree entered upon a petition for attachment for contempt in a suit in equity which has been before this court in other aspects and is reported in 239 Mass. 70, and in 242 Mass. 69. The case was brought in order to enforce the rights of the plaintiffs to have a strip of land ten feet wide on the defendant's land, being one half of a twenty foot passageway over which the plaintiffs have rights, kept open and unobstructed. The plaintiffs prevailed on the merits of the main action. The final decree after the last rescript ordered the defendants "to cause the removal . . . of . . . the hatchway about 4 feet square in the concrete sidewalk . . . [and] filling or covering all excavations in such a way as to render the passageway substantially as firm, sound, and convenient for passage on foot and by teams and trucks as it was on April 18, 1899."

The single justice on the petition for attachment for contempt found and ruled with respect to this matter, "That the hatchway in the concrete sidewalk on the westerly side of the Lenox Hotel building has not been removed and that the decree has not been complied with by 'filling or covering all excavations in such a way as to render the passageway substantially as firm, sound and convenient for passage on foot and by teams and trucks as it was on April 18, 1899.' It is

the contention of the petitioners that by the terms of the decree the hatchway is to be removed.   It was said in the last opinion in this case, 242 Mass. 69, at page 74, that 'they [the defendants] are the owners of the fee of the strip of land ten feet in width adjacent to their main lot, being one half of the passageway.   By virtue of such ownership they have the right to make any reasonable use of the land covered by that part of the passageway not inconsistent in law with the paramount easement owned by the plaintiffs.   The terms of that paramount easement require them to keep their part of the passageway open above the ground.   But the defendants may surface the part of the passageway of which they own the fee in any appropriate way so long as it is left safe and convenient and adapted for the uses for which it was established.'   In view of the foregoing statement in the opinion, considered in connection with the language of the final decree, after rescript, I am of opinion and rule that the defendants are entitled to maintain the hatchway, provided it is covered in such a manner as to make that part of the passageway at all times as safe and convenient for passage on foot and by teams and trucks as it was on April 18, 1899.   I find that the cover over this hatchway, consisting of steel three eighths of an inch in thickness is not a compliance with the decree, and while safe and convenient to pass over by persons on foot is entirely inadequate and unsafe for passage by trucks.   This conclusion is in accordance with the testimony of expert witnesses called by both parties. I further find that the defendants have failed to cover this hatchway with suitable material to render it safe within a reasonable time after July 15, 1922, and that by reason of such failure they are in contempt."

This interpretation of the decree was erroneous.   The words of the decree are unequivocal and positive to the effect that the hatchway must be removed.   The manifest purpose of the decree in the light of the two opinions of the full court was to assure to the plaintiffs freedom of passage over that part of the way occupied by the hatchway, but not to require the defendants to fill with earth the space underneath the hatchway, provided without doing that the passageway

could be made safe for the passage of heavy trucks. The right of way of the plaintiffs over the surface of the passageway was to be uninterrupted by the opening of the hatch and its use for the purposes for which a hatchway is commonly used.

As to another ground of complaint urged by the plaintiffs, the single justice found that, "the defendants have failed to comply with the terms of the decree which ordered them to 'cause that portion of the passageway on the southerly side of said building occupied by a flight of steps leading downward, being ten feet long by four feet wide, by an open area nine feet long by four feet wide at the foot of the stairs, by the openwork iron grating near the head of the stairs toward Exeter Street covering an open area or air well four feet wide and eight feet long and the curbing or wall which runs around this area, to be filled or covered and strengthened so as to render those parts of the passageway substantially as firm, sound and convenient for passage on foot and by teams and trucks as it was on April 18, 1899, and as reasonably usable for such passage in connection with the rest of the passageway as it was on that date, the level of said portion of the passageway to be so changed as to be made to conform substantially to the level of the passageway on that date, and all structures to be removed so far as necessary to that end.' I find and rule that the defendants have covered by concrete the open space from the head of the stairs toward Exeter Street in compliance with the decree; that they maintain the stairway with a cover over it, and also maintain an elevator for lowering and raising trunks and other articles to and from the sidewalk and the basement of the hotel; that this elevator is closed with a cover over it substantially on a level with the sidewalk when not in use; that the stairway and elevator well when closed are covered by steel doors; that these covers, while suitable and sufficient for foot passage, are not of the required thickness and strength to make the passageway safe and convenient for heavy trucks; that the defendants have failed to comply with the decree in not placing over said openings suitable and sufficient doors or covers within a reasonable time from and after July 15, 1922, and are in

contempt by reason of such failure.   I rule that if safe and sufficient covers are placed over the stairway and elevator well that the decree will be complied with."   Here also there was error in the interpretation of the final decree.   In the decision in 239 Mass. at page 77, in explaining and delimiting the scope of the words creating the grant and reservation, it was held that they "import an intent of the parties that the entire passageway and not a convenient part of it shall be subject to an easement of passage, of light and air and of drainage," and that evidence of general use of like easements in Boston was immaterial.   The second opinion in 242 Mass. 69, did not purport to modify the general principles of law declared in the first opinion.   It merely preserved to the defendants the right to use the land beneath the surface of the way in any manner not interfering with the right of passage described in the earlier opinion.   The first decree went further in that respect than the principles of law required. The interpretation of the final decree after the last rescript by the single justice on the petition for contempt, goes to the extent of interfering with the rights of passage of the plaintiffs over the surface of the way as established by the opinions of this court.

Nevertheless, the defendants were adjudged guilty of contempt for failing to comply with the terms of the final decree after the last rescript.   That finding manifestly was sound even in the view of that decree taken by the single justice. The decree of the court adjudged the defendants guilty of contempt and ordered them to "pay a fine of  one hundred and fifty dollars ($150) for such contempt, the same to be paid to the complainants to reimburse them for their costs and expenses incurred in this proceeding."

It is urged by the defendants that, even though there was error in the rulings, there is no ground in law for reversal of the decree entered on the petition for contempt.   This involves some inquiry into practice.

A writ of error does not lie to correct errors of law in a decree in equity.   The words "judgment in a civil action" in G. L. c. 250, § 3, do not include proceedings in equity. "A writ of error lies where the proceedings are according to

the course of the common law, but it does not lie in proceedings in equity unless it is authorized by statute. The customary remedy in equity to reverse a final decree for error of law apparent on the record is by a bill of review." *Evans v. Hamlin,* 164 Mass. 239, 240. *Nashua & Lowell Railroad v. Boston & Lowell Railroad,* 169 Mass. 157, 161, 162. *Mulrey v. Carberry,* 204 Mass. 378. Nothing to the contrary was decided in *Home Investment Co. v. Iovieno,* 246 Mass. 346, 348.

It was said by Chief Justice Knowlton in *Newton Rubber Works v. De las Casas,* 198 Mass. 156, 157, that errors of law arising at a hearing on a petition for contempt "are usually presented by a report, or, if a criminal contempt is alleged, by a writ of error." A citation of supporting authorities follows. *White v. White,* 233 Mass. 39. Whether appeal lies from such a decree or whether exceptions may be taken at such a trial has never been decided in this Commonwealth, although intimations are to the contrary. *Hurley v. Commonwealth,* 188 Mass. 443, 444. *Kelly v. Morrison,* 234 Mass. 382. *DeFerrari v. DeFerrari,* 220 Mass. 38. It has been said to be open to grave doubt whether exceptions lie in proceedings for direct contempt of court. *Commonwealth v. McNary,* 246 Mass. 46, 48. A complaint for contempt for violation of an interlocutory or final decree in equity "is really but an incident to the principal suit, and all the papers relating to it should be filed with the other papers in the case." It is irregular to treat such a complaint as a distinct cause. *Winslow v. Nayson,* 113 Mass. 411, 420. In *Cartwright's Case,* 114 Mass. 230, 239, which grew out of a receivership proceeding where the receiver misappropriated funds, it was said: "An application for an attachment for contempt is to be made and filed in the original cause; after the attachment has issued, the proceedings are distinct and are criminal in their nature." *Hamlin v. New York, New Haven & Hartford Railroad,* 170 Mass. 548, 550. The distinction between civil and criminal contempts often has been made, and important results sometimes have been made to turn on that distinction. See, for example, *Bessette v. W. B. Conkey Co.* 194 U. S. 324; *Gompers v. Bucks Stove & Range Co.* 221 U. S. 418; *In re Nevitt,* 54 C. C. A. 622; *Terminal Railroad*

*Association of St. Louis* v. *United States*, 266 U. S. 17, 27. That distinction has been referred to in some of our decisions; but the subject has not been fully discussed and under our practice that line of demarcation has not been strictly observed.    Fines to the use of the Commonwealth and not of the party have been imposed under the forms of civil procedure.    Instances of this are *Casson* v. *McIntosh*, 199 Mass. 443, *Irving & Casson-A. H. Davenport Co.* v. *Howlett*, 229 Mass. 560, *Stodder* v. *Rosen Talking Machine Co.* 247 Mass. 60.    Doubtless there are other cases of this sort, which, or some of which, have not come to the full court.    It was said in *McCann* v. *Randall*, 147 Mass. 81, 90, "Proceedings for contempt may be either for the purpose of inflicting punishment upon one who has wilfully disobeyed a lawful order of the court, or for the purpose of obtaining the result which might have been reached by the enforcement of its decree but for the intervention of the wrongful act of the party violating its order, or in appropriate cases for both purposes." Whatever else may be said about proceedings for contempt, it is plain that they are *sui generis* in their nature and not strictly either civil or criminal, as those terms commonly are used.    *Cartwright's Case*, 114 Mass. 230.    *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310.    *Myers* v. *United States*, 264 U. S. 95.

The frame of the petition for attachment for contempt, the rulings of the single justice and the form of the decree indicate that that proceeding was designed to enforce the property rights of the plaintiffs and was so treated by the court. The defendants were found guilty of contempt in the very particulars for which the plaintiffs contended and now contend.    Manifestly the amount of the fine is not open to revision.

All these considerations lead to the conclusion that the petitioners are not entitled to any relief on the present record.

*Writ dismissed.*