NEW ENGLAND NOVELTY CO., INC. *vs.* SAMUEL SANDBERG & others.

Worcester. March 3, 1942. — April 26, 1944.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Contempt. Practice, Civil,* Exceptions: whether appropriate procedure; Contempt proceedings; Jury trial; Labor case. *Equity Pleading and Practice,* Contempt proceedings, Jury trial, Labor case, Injunction. *Labor and Labor Union. Picketing. Words,* "Trial . . . by . . . jury," "At . . . the entrances," "Congregating."

Discussion by RONAN, J., of review of contempt proceedings, and of the scope of a "trial by jury."

A bill of exceptions is a proper method of bringing to this court questions of law arising at a trial by jury, under G. L. (Ter. Ed.) c. 220, § 13A, inserted by St. 1935, c. 407, § 5, of a proceeding for contempt for disobedience of an injunction issued in a suit in equity involving a labor dispute.

The propriety of the issuance and the terms of an injunction, if they are within the jurisdiction of the court granting it, are not open to question in a proceeding for contempt for disobedience of the injunction.

In an injunction against maintaining more than two pickets "at . . . the entrances" to a factory, those words meant at or near or in the vicinity of the entrances, and not merely the actual area or place "which makes up the entrances"; and there was a violation of the injunction where, in addition to two pickets stationed at each of the entrances, others walked to within five or six feet of the entrances and then walked away, or walked past the entrances and back again.

There might properly be found to have been a violation of an injunction in a labor case against "molesting, intimidating or threatening or preventing any person from" entering or leaving factory premises if pickets present at or near the entrances to the premises were of such a number as to intimidate or molest an ordinary person, although there was no evidence of violence or of threats of injury by the pickets.

At a jury trial of a proceeding for contempt for violation of an injunction in a labor case against "congregating" on streets adjacent to factory premises, there was no error in the refusal of a request presented by the alleged contemnors for a ruling that picketing did not constitute such congregating, the subject matter having been sufficiently covered by certain instructions to the jury as to the meaning of the word "congregating" and as to the right of the alleged contemnors to picket.

BILL IN EQUITY, filed in the Superior Court on October 14, 1941.

A preliminary injunction was entered which, in part, enjoined the defendants from "1. Maintaining over two pickets at any time at each of the entrances used by employees going to and from the premises" occupied by the plaintiff and the Commonwealth Plastic Company on Adams Street and Cotton Street in Leominster; "2. Molesting, intimidating or threatening or preventing any person from going to and from" such premises; "3. Congregating on either Adams Street or Cotton Street"; and which also contained the following clause: "6. There is no attempt hereby to limit the statutory or constitutional rights of either party to peacefully persuade or exercise their rights of free speech and of free press."

On October 24, 1941, the plaintiff filed a petition that the defendants be adjudged in contempt for violation of the injunction, alleging in part that the defendants disobeyed its terms "(2) by maintaining over two pickets at the . . . [entrances] designated in . . . said preliminary injunction; (3) by doing acts intended and designed to molest, intimidate, threaten and prevent persons and employees from going to and from the premises . . .; (4) by congregating on Adams Street and Cotton Street . . .; (6) by interfering and attempting to interfere with and prevent present employees of the New England Novelty Company and Commonwealth Plastic Company from remaining in their em-

ploy and interfering with persons who desire to enter the employ of said New England Novelty Company and Commonwealth Plastic Company"; and that "in furtherance of said acts violative of said preliminary injunction, the said defendants have engaged in mass picketing, mass congregating on Adams Street and Cotton Street and for the purpose of intimidating, molesting or preventing persons or employees going to and from the premises of said companies or remaining in its employ or interfering with and preventing persons who desire to enter its employ from doing so."

The contempt petition was ordered tried by a jury, and was so tried before *Brogna*, J. Certain of the defendants' requests for rulings were as follows: "7. An injunction can operate only to prevent unlawful acts, and acts which are lawful are not properly included within the scope of any injunction, for to do so would violate the statutory rights of the defendants as set forth in" St. 1935, c. 407, § 4, "and also the due process clause of the 14th Amendment of the United States Constitution. 8. The injunction does not prohibit picketing except insofar as it limits the pickets at each entrance specified therein to two, and, therefore, the acts of the defendants in picketing the premises at places other than the entrance, are not a violation of said injunction. . . . 9. The acts of the defendants in picketing the premises of the plaintiff at places other than the entrances named in the preliminary injunction cannot be considered as congregating in violation of the prohibitory language of the injunction, but are an exercise of free speech and free press by the defendants as guaranteed to them by the due process clause of the 14th Amendment of the United States Constitution. . . . 15. Peaceful picketing does not constitute an act designed to molest, intimidate, threaten and prevent persons and employees from going to and from the premises of the plaintiff, nor an attempt so to do or interference with the employment of any person by the plaintiff."

Portions of the charge to the jury were as follows: ". . . I better explain to you the meaning of the phrase, — at each of the entrances . . . the contention of the defendants being that 'at each of the entrances' means that area or that lo-

cation, or that place which makes up the entrances, whether it is six feet wide, ten feet wide, or whatever it is and that, therefore, this injunction did not stretch out and reach any picketing outside of that six feet, eight feet, ten feet area called the entrance or entrances . . . . Gentlemen, the word 'at' again has received judicial interpretation several times. It has been determined and interpreted as not being a definite word, but rather an indefinite word; and in order to interpret it it is necessary to read it with its background, with the rest of the injunction, and having in mind the purpose which the injunction as a whole intended to accomplish. I, therefore, say to you as a matter of law, that entrance does not restrict it to that area six or eight or ten feet width; that it means at or near, it means that area in the vicinity of, it means at or about. In the vicinity of, near or about, of course, could not take in a distance which was not intended by the wording of the injunction to be included in it. . . . What he [the judge who entered the injunction] was trying to accomplish was to protect the union and its members in their lawful right to picket; that is by peaceful persuasion, in an orderly manner; and at the same time to protect the rights of those who did not want to go on strike and wanted to go to work by ordering, or entering a restraining order, injunction, in such a way and in such terms that these men who desire to work rather than strike would have a reasonable opportunity to go into and from their work in this plant without the molestation, without the intimidation, and I will come to what those mean later, of more than two men at each entrance. You see it would not accomplish the purpose if you had two men at each entrance, and then a hundred men six inches removed from the entrance, or six feet removed, or ten feet removed, or such distance as the men going to and from work would naturally have to go by, or run the gauntlet or numbers of men. . . .

"Those words, — molesting, intimidating, threatening or preventing, are used in their ordinary significance such as you would use them in ordinary use. . . . To molest a person it is not necessary to touch him, or it is not necessary to call him vile names, or it is not necessary to threaten.

That is a threat; touching is an assault and battery; molesting means to disturb, to vex, to pester. A person is disturbed if the ordinary, reasonable individual similarly situated would have been disturbed. You will notice, gentlemen, there is no evidence here that anyone was disturbed, or anyone was intimidated or anyone was threatened, so you might be saying to yourself, — how can we decide anyone was molested, intimidated or disturbed. The law is that you do not pry into the mind of an individual to find out what his nervous system is or his intellect to find out how a thing reacts; you find out, you twelve ordinary men, from the acts that you find from this evidence, or words if any from this evidence were actually done or said, how they would have reacted in the mind of the ordinary individual in the community situated as these workers who were going in and out were situated, and if such reasonable individuals so situated were molested by what was done there or was said, or would have been molested, then there is a violation of the injunction as far as that term is concerned. Let us take the second one, 'intimidate'. To intimidate, gentlemen, is to excite fear, to put one in fear, and there can be no intimidation unless you find from what you find was done it reasonably would have excited fear, or created fear in the mind or body or both of the ordinary persons similarly situated. Fear. Fear of what? Fear of bodily harm. Fear of damage to property. Fear of being interfered with in a legal right. To fear that which a person had a lawful right to do. Fear that something would happen to him. Let us take the next word, 'threaten'. Threat is akin to intimidation. Sometimes intimidation is the result of threat. A threat is a menace, a gesture, an act or a series of acts or gestures, or words which excite and arouse fear of personal injury or property damage in the individual. So, Mr. Foreman and gentlemen, with that explanation you determine from this evidence whether there has been any violation of this order as far as number two paragraph is concerned.

"The next one is 'congregating' . . . on either Adams Street or Cotton Street in said Leominster. Well, you all know what congregating means, — to congregate together,

to gather together in groups. It makes no difference what you congregate for, as far as that particular paragraph is concerned. The order enjoins the defendants and others interested in this thing from congregating at that place, collecting together in groups. . . .

"Well, gentlemen, that brings us to what we mean by peaceful persuasion and peaceful picketing. Obviously, every person has a right to sell his cause to another, to convince another that his cause is right. Strikers have a right to convince non-strikers or others who may be taking or thinking of taking the place of strikers, to convince them that it is not for their benefit in the long run, that it is not for the benefit of the community, that it is not advantageous to them to break a strike and that they ought not to take the employment; or if they are already working to leave the employment. And if that is done either by word of mouth or by conduct or by placards or by mail or by advertising or by pamphlets, or in such manner they had a legal right to do, then this injunction does not abridge them of that right, does not take that right away from them. But peaceful picketing and peaceful persuasion means what it says, and peaceful is a much more general term than lawful. I mean by that it includes, takes in peace of mind. It is not peaceful persuasion for me to try to sell my views to someone else by molesting, intimidating, force, violence, either threatening or otherwise, and there is no evidence in this case, gentlemen, do not misunderstand there is no intimidation of force or violence; they must do it in a way that is peaceful not only from the standpoint of violence, breach of the peace, a fight in the street, that is not the only thing that makes a thing not peaceful persuasion. It must be done in such a way and under such circumstances that I am not intimidated by acts or word or conduct, the ordinary person similarly situated with the fellow who is going in and out of work in these plants. So you take this evidence and find how many there were, if any, that were doing picket duty in front of these plants; the circumstances under which they did it, the numbers, how close they came to where the workers had to go in and out . . . and what you find from

the evidence was done, was it done in such a way so that it disturbed the peace of the persons they were trying to impress, not only the peace of the community but the peace of everyone themselves, the public as well as those they were trying to impress, trying to sell their cause to. Numbers, of course, play a part. Obviously, gentlemen, if there is a union of five thousand, and there is no evidence there is — simply to explain what I mean — and the five thousand members en masse go to a place where there is a strike, even though they did nothing else but simply set there and look at the people going in and out, do nothing disorderly in the sense that you and I understand disorderly, no breach of the peace, no attempt to touch anyone, no belligerent or inflammatory epithets or words used, nothing said at all, as a matter of fact you would be warranted in finding, if you did so find, that by virtue of the numbers it would be intimidation as far as the ordinary person so situated was concerned, or it would be molesting, for it would not be peaceful if it deprived peace of mind from everybody concerned, or any part of it, provided that that part is what we call the ordinary, reasonable individual similarly situated. So that I am leaving to you, gentlemen, . . . whether the numbers that you find, if any beyond the two, did picketing, picket duty as I have explained it to you, whether they were such in point of numbers as well as where they were, as to amount to non-peaceful persuasion."

*S. M. Salny*, for the plaintiff.

*S. S. Grant*, for the defendants.

RONAN, J. This is a petition charging the fifteen defendants with violating the terms of a preliminary injunction granted in a suit in equity filed in the Superior Court by the New England Novelty Co., Inc., and the Commonwealth Plastic Company, manufacturing concerns which occupied different portions of the same factory in Leominster and were involved in a labor controversy with a trade union. The petition was tried before a jury. G. L. (Ter. Ed.) c. 220, § 13A, inserted by St. 1935, c. 407, § 5. The defendants were found guilty. Some of the defendants were sentenced to various terms in the common jail and the rest

of them were sentenced to pay fines of different amounts. The defendants have alleged exceptions, and the plaintiff has excepted to and appealed from a denial of its motion to dismiss the bill of exceptions filed by the defendants.

The single contention of the plaintiff is that exceptions do not lie in proceedings for contempt and that there was error in not dismissing the bill of exceptions of the defendants.

Proceedings for contempt, whether brought for the purpose of compelling compliance with the orders or decrees of the court for the benefit of a plaintiff or for the purpose of inflicting punishment in the public interest upon one who has flouted the dignity and authority of the court, have always been considered as sui generis. Every court of superior jurisdiction has the inherent power to compel obedience to its decrees and to punish those who obstruct or degrade the administration of justice. At common law a higher court had no jurisdiction to review the proceedings of the court in which a judgment for contempt was entered. *Blankenburg* v. *Commonwealth,* 260 Mass. 369. *Silverton* v. *Commonwealth,* 314 Mass. 52. *Opinion of the Justices,* 314 Mass. 767.

The principle that proceedings for contempt were not subject to review was apparently thought too inflexible to meet the needs of modern society. The tendency to provide a method for review in those cases where the basis of the contempt proceedings was the violation of an order intended merely for the relief of a litigant and not because of the commission of an act which tended to bring the court into disrepute and to degrade the administration of justice found expression in the practice which has developed of reporting to this court errors of law which a defendant alleged were committed by the trial judge. It was said by Knowlton, C.J., in *Newton Rubber Works* v. *De las Casas,* 198 Mass. 156, 157, that "Such questions are usually presented by a report, or, if a criminal contempt is alleged, by a writ of error." Questions of law arising out of the trial of civil contempts, so called, have been frequently presented to this court by a report. *Hamlin* v. *New York, New Haven & Hartford Railroad,* 170 Mass. 548. *DeFerrari* v. *DeFerrari,*

220 Mass. 38. *Irving & Casson—A. H. Davenport Co.* v. *Howlett*, 229 Mass. 560. *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310. *Wireless Specialty Apparatus Co.* v. *Priess*, 246 Mass. 274. *Stodder* v. *Rosen Talking Machine Co.* 247 Mass. 60. *Korobchuk's Case*, 280 Mass. 412. *Jenney* v. *Hynes*, 285 Mass. 332. *Bacon* v. *Onset Bay Grove Association*, 286 Mass. 487. *Prenguber* v. *Agostini*, 294 Mass. 491. *Wilbur* v. *Newton*, 307 Mass. 191. It is true that this court has passed upon errors of law alleged to have occurred at the trial of a petition for contempt brought to secure compliance with a decree of the court for the benefit of a party litigant which were brought here by appeal or exceptions, although the court was careful to point out that it was not to be understood that, in passing upon the merits, it was recognizing that either an appeal or exceptions were the proper method of bringing the case here. *Kelly* v. *Morrison*, 234 Mass. 382. *Home Investment Co.* v. *Iovieno*, 246 Mass. 346. *Creeley* v. *Creeley*, 258 Mass. 460. *Commissioner of Banks* v. *Tremont Trust Co.* 267 Mass. 331. *Hunt* v. *Bassett*, 269 Mass. 298. It was said in *New York Central Railroad* v. *Ayer*, 253 Mass. 122, 128, which was a writ of error to review a final decree adjudging the defendants in error in contempt for violating a final decree entered in a suit in equity, that a writ of error does not lie to correct errors of law in a decree in equity, and that "Whether appeal lies from such a decree or whether exceptions may be taken at such a trial has never been decided in this Commonwealth, although intimations are to the contrary." See *Commonwealth* v. *McNary*, 246 Mass. 46, 48; *Cherry* v. *Cherry*, 253 Mass. 172, 176; *Dolan* v. *Commonwealth*, 304 Mass. 325, 335. It would seem that, in the absence of a statute giving a right to a review by exceptions or appeal to one who has been adjudged in contempt, he has no right to review by either of the methods mentioned.

A defendant in proceedings brought to vindicate the authority of the court and to punish him for flouting its authority and for obstructing and degrading the administration of justice may by writ of error obtain a review ordinarily limited to questions of law apparent on the record

returned by the court in which the judgment of contempt was entered. This was settled after great deliberation in *Hurley* v. *Commonwealth,* 188 Mass. 443. It is not necessary to repeat what was there said. It is enough to say that the practice thus established has been followed in seeking reviews of proceedings for criminal contempt. *Globe Newspaper Co.* v. *Commonwealth,* 188 Mass. 449. *Blankenburg* v. *Commonwealth,* 260 Mass. 369. *Woodbury* v. *Commonwealth,* 295 Mass. 316. *Dolan* v. *Commonwealth,* 304 Mass. 325. *Silverton* v. *Commonwealth,* 314 Mass. 52. *Berlandi* v.. *Commonwealth,* 314 Mass. 424. *Albano* v. *Commonwealth, ante,* 531.

The correctness of the ruling refusing to dismiss the exceptions of the defendants does not depend upon the general principles already discussed governing reviews in contempt proceedings if the statute giving the defendants the right to a trial by jury also includes the right to a review by exceptions. This statute, G. L. (Ter. Ed.) c. 220, § 13A, inserted by St. 1935, c. 407, § 5, provides that "Any person who shall wilfully disobey any lawful writ, process, order, decree or command of the court in any suit in which injunctive relief is sought in any matter involving or growing out of a labor dispute, as defined in section twenty C of chapter one hundred and forty-nine, by doing any act or thing in or by such writ, process, order, decree or command forbidden to be done by him, if the act or thing so done by him is of such character as to constitute also a criminal offence under the laws of the commonwealth shall enjoy the right to a speedy and public trial for his said contempt by an impartial jury of the county wherein it shall have been committed; provided, that this right shall not apply to contempts committed in the presence of the court or so near thereto as to interfere directly with the administration of justice or apply to the misbehavior, misconduct or disobedience of any officer of the court in respect to the writs, orders or process of the court." This section is a part of said c. 407, which established certain procedure in suits in equity arising out of labor controversies. This chapter deals "with questions of jurisdiction, the conditions upon which injunctions may be issued in labor

disputes, and the procedure to be followed in reference to injunctions and contempts in this class of cases." *Fashioncraft, Inc.* v. *Halpern,* 313 Mass. 385, 389.

No question is raised but that the acts done by the defendants which it is contended were in violation of the preliminary injunction were acts that also constituted a criminal offence. Neither is any question raised but that the defendants were entitled under this statute to a trial by jury. The parties tried the petition upon the theory that it charged the defendants with criminal contempt, and the judge with the assent of the parties instructed the jury that the defendants were presumed to be innocent, that the violation of the injunction must be proved beyond a reasonable doubt, and that no inference could be drawn against those of the defendants who did not testify. The petition, however, was brought by the plaintiff to secure for itself the benefits to which it was entitled under the injunction, and the character and nature of the acts complained of would seem to indicate that they were committed not for the purpose of defying the court but rather because of a reluctance to yield to the plaintiff a right which the injunction established in favor of the plaintiff. The fact that the terms of imprisonment and fines were imposed upon the defendants would not change the predominating purpose and object of the petition which appears on its face to have been remedial and not punitive. *Casson* v. *McIntosh,* 199 Mass. 443. *Irving & Casson–A. H. Davenport Co.* v. *Howlett,* 229 Mass. 560. *Stodder* v. *Rosen Talking Machine Co.* 247 Mass. 60. *New York Central Railroad* v. *Ayer,* 253 Mass. 122. The defendants were not charged with or tried for a criminal offence but were tried solely for the violation of the terms of the injunction. The fact that the act that comprises the violation must also constitute a criminal offence is a requirement of the statute providing for a jury trial of the alleged contempt. The fact that the same act constitutes a criminal offence and also contempt of court does not prevent a prosecution for the crime or bar proceedings for contempt. *Blankenburg* v. *Commonwealth,* 272 Mass. 25, 32. *Ex parte Hudgings,* 249 U. S. 378, 382–383. Without further analyzing

the character of the petition and the nature of the contempt charged, it is enough for present purposes to point out that the parties agreed that the petition was one that entitled the defendants to a jury trial in accordance with the statute.

The statute provides a new mode of procedure for the trial of petitions charging contempts of the kind and character described by the statute. In terms, it goes no farther than to provide for a trial "by an impartial jury." A trial by jury, however, does not mean that the verdict is final and conclusive upon the parties in the sense. that it cannot be set aside for errors of law. A trial by jury comprehends a full and fair hearing upon all relevant issues where all questions of fact presented by the testimony are decided by the jury in accordance with the principles of law given to them in the instructions by the judge. For example, one cannot rightly be said to have had a trial by jury if he is denied the right to have the verdict set aside where the evidence was insufficient to support it. *Opinion of the Justices,* 207 Mass. 606, 609. *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467. *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 13–16. *Galloway* v. *United States,* 319 U. S. 372, 390. Doubtless, the power of a judge at common law and under the statute, G. L. (Ter. Ed.) c. 231, §§ 127, 128, to set aside a verdict for any reason recognized by law is a part of the constitutional right to a trial by jury. *Ellis* v. *Ginsburg,* 163 Mass. 143. *Edwards* v. *Willey,* 218 Mass. 363. *Dziegiel* v. *Westford,* 274 Mass. 291. *Macchiaroli* v. *Howell,* 294 Mass. 144.

Under the former practice in probate appeals a single justice of this court was authorized by R. L. c. 162, § 25, to "frame issues of fact to be tried by a jury." It has been held that the trial of these issues was according to the course of common law and that errors alleged to have been committed at the trial could be brought to this court by a bill of exceptions allowed by the trial judge. *Crocker* v. *Crocker,* 188 Mass. 16, 21. *Ingalls* v. *Oliver,* 198 Mass. 345. *Lambert* v. *Cheney,* 221 Mass. 378.

In suits in equity a single justice of this court or a judge of the Superior Court, G. L. (Ter. Ed.) c. 214, §§ 34, 36, "may frame issues of fact to be tried by a jury." Errors at

the trial of such issues are not brought to this court by an appeal in the equity case but are to be brought here in the same manner as are questions of law in actions at law. *Dorr* v. *Tremont National Bank,* 128 Mass. 349. *Witherington* v. *Eldredge,* 264 Mass. 166. *Todd* v. *Pearce,* 291 Mass. 455.

The framing of issues in probate appeals and in suits in equity splits the trial of the cause of action and creates a branch, separate from the principal case, for the determination of a jury. While a petition for contempt is filed in the principal case, the petition is a separate proceeding which is to be tried apart from the main case. *Cartwright's Case,* 114 Mass. 230. *Hamlin* v. *New York, New Haven & Hartford Railroad,* 170 Mass. 548.

We think that the words "trial . . . by an impartial jury" appearing in § 13A of c. 220 are as comprehensive as the words "to be tried by a jury" appearing in R. L. c. 162, § 25, and G. L. (Ter. Ed.) c. 214, §§ 34, 36, and should be given a similar meaning.

The fact that a jury trial can be had only if the defendant's act upon which the proceedings for contempt are based also constituted a criminal offence is indicative of the legislative intent that the defendant in the contempt proceedings shall have the same protection, in so far as a trial by jury and a review by bill of exceptions are concerned, as if he were prosecuted for a criminal offence alone.

It must be assumed that the Legislature in enacting what is now G. L. (Ter. Ed.) c. 220, § 13A, was familiar with the decisions holding that a trial by jury in equity and probate cases carried with it the right of review by a bill of exceptions, that it also knew that a review by a writ of error was not adequate to reach errors of law alleged to have been committed during the trial, *Devney's Case,* 223 Mass. 270; *Proprietors of the Cemetery of Mount Auburn* v. *Unemployment Compensation Commission,* 301 Mass. 211; *Boston* v. *A. W. Perry, Inc.* 304 Mass. 18, and that by conferring a right of trial by jury it intended that the usual method of review by a bill of exceptions should be had in the limited class of cases included within the statute. Even if proceedings for contempt of the kind with which we are now dealing

are not in the course of common law, yet the Legislature had the right to establish a new procedure for review in these proceedings just as it has done with reference to creating a remedy by exceptions "in any civil cause, according to the course of the common law or otherwise." G. L. (Ter. Ed.) c. 231, § 113. We think exceptions saved at the jury trial upon a petition for contempt of the kind described in the statute can be presented to this court by a bill of exceptions and that this was the means intended by the Legislature for a review in behalf of the defendants when the privilege of a jury trial was given to them.

The legislative history of bills of exception in both criminal and civil cases shows that it was the intent of the Legislature to eliminate the cumbersome and inconvenient method of requiring a party aggrieved by errors of law committed at a trial to resort to a bill of exceptions for the purpose of incorporating his exceptions into, and making them a part of, the record in order that they may be open on a writ of error, and to substitute an easy and direct method of review by a bill of exceptions. Successive amendments to the original statutes, St. 1803, c. 94, § 5, and St. 1804, c. 105, § 5, which now appear as G. L. (Ter. Ed.) c. 231, § 113, as to civil cases, and G. L. (Ter. Ed.) c. 278, § 31, as to criminal cases, have greatly extended the scope of exceptions, and they have become the usual method of securing a review of errors of law alleged to have been committed during the course of the trial. See *Cogswell* v. *Dolliver*, 2 Mass. 217; *Endicott, petitioner*, 24 Pick. 339; *Eaton* v. *Hall*, 5 Met. 287; *Tyndale* v. *Stanwood*, 186 Mass. 59; *Loveland* v. *Rand*, 200 Mass. 142; *Commonwealth* v. *Marsino*, 252 Mass. 224.

There was no error in the denial of the plaintiff's motion to dismiss the defendants' exceptions. As the plaintiff's appeal raises the same question as is raised by its exception, which must be overruled, we need not consider the appeal, which must be dismissed. *Worcester* v. *Bennett*, 310 Mass. 400. *St. George's Church* v. *Primitive Methodist Church*, ante, 202.

We now pass to the exceptions taken by the defendants. The preliminary injunction was entered in a suit in equity brought by the plaintiff and another employer who occupied

premises located upon Adams and Cotton streets in Leominster.    The injunction, so far as now material, prohibited the defendants from maintaining more than two pickets at each of the entrances to these premises, from "molesting, intimidating or threatening or preventing any person from" entering or leaving these premises, and from congregating on either Adams Street or Cotton Street.    It also contained the following clause: "6. There is no attempt hereby to limit the statutory or constitutional rights of either party to peacefully persuade or exercise their rights of free speech and of free press."

We assume that the situation existing at the time this injunction was issued warranted its issuance and justified the imposition of the conditions that it contained.    The defendants could have availed themselves of the speedy and effectual remedy provided by G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4, if they desired a modification or a discharge of the injunction.    *Mengel* v. *Justices of the Superior Court,* 313 Mass. 238.    It is undisputed that the Superior Court had jurisdiction to grant the injunction, and the sole issue presented is whether the defendants have violated its terms.    *Stanley* v. *Old Colony Railroad,* 176 Mass. 145, 149, 150.    *Bacon* v. *Onset Bay Grove Association,* 286 Mass. 487.    *Prenguber* v. *Agostini,* 294 Mass. 491, 494, 495. *Bonifazi* v. *Breschi,* 296 Mass. 544, 547.    *Howat* v. *Kansas,* 258 U. S. 181.    While the injunction remained in force the defendants were required to obey its commands.    *Hamlin* v. *New York, New Haven & Hartford Railroad,* 170 Mass. 548.    *Irving & Casson–A. H. Davenport Co.* v. *Howlett,* 229 Mass. 560.    *Wireless Specialty Apparatus Co.* v. *Priess,* 246 Mass. 274.    *New York Central Railroad* v. *Ayer,* 253 Mass. 122.

The main contention of the defendants is that they did not violate the injunction.    There was evidence that twenty-five or thirty persons were engaged in picketing when one set of the plaintiff's employees finished their work and another shift went to work; that, in addition to the two pickets stationed at the entrances, those who were engaged in picketing would walk almost to the entrances and then

walk away; that they would go within five or six feet of the entrances; that sometimes they walked by the entrance and back again, "they walked in two or threes, military fashion one behind the other." There was no evidence of violence, threats of physical injury or damage to property and the jury were so instructed. The judge instructed the jury that picketing by more than two pickets was prohibited "at each of the entrances," and that that meant at or near or in the vicinity of the entrances. He told the jury that the purpose of this provision of the injunction was to allow the union and its members to exercise their lawful right to picket and at the same time to allow those who desired to work a reasonable opportunity to go to and from their work without molestation. He correctly defined the area in which two pickets were permitted, and there was no error in refusing to rule as the defendants requested that "at each of the entrances" must be restricted to the actual area or "place which makes up the entrances, whether it is six feet wide, ten feet wide, or whatever it is." The defendants' exception to this portion of the instructions is untenable. *O'Connor* v. *Nadel,* 117 Ala. 595. *Shephard* v. *Hopson,* 191 Ark. 284. *Minter* v. *State,* 104 Ga. 743. *Clark County Fiscal Court* v. *Powell County Fiscal Court,* 223 Ky. 10. *Kaler* v. *Tufts,* 81 Maine, 63. *Lovin* v. *Hicks,* 116 Minn. 179. *Albany College* v. *Monteith,* 64 Ore. 356.

The only other exception to the instructions was a statement that the jury could consider the number of those engaged in picketing and were to find whether the number was such as could intimidate or molest the ordinary person. An inference could properly be drawn from the presence of an unnecessarily large number of pickets that the purpose of the defendants was to demonstrate their power and strength to the employees of the plaintiff and to instill in them fear and apprehension. The charge must be considered as a whole and what was said with reference to the number of pickets when construed with the rest of the instructions was not error. *Fashioncraft, Inc.* v. *Halpern,* 313 Mass. 385, 392. *Carey* v. *District Court of Jasper County,* 226 Iowa, 717. *Eastwood-Nealley Corp.* v. *International Association of Ma-*

*chinists, District No. 47*, 124 N. J. Eq. 274. *Goldfinger* v. *Feintuch*, 276 N. Y. 281. *Remington Rand, Inc.* v. *Crofoot*, 248 App. Div. (N. Y.) 356. *Lilly Dache, Inc.* v. *Rose*, 28 N. Y. Sup. (2d) 303. *George B. Wallace Co.* v. *International Association of Mechanics*, 155 Ore. 652.

There was no error in refusing to direct verdicts of not guilty or in the denial of the requests for rulings. The third, fourth and fifth requests were sufficiently covered by the instructions to the jury. The seventh request, if assumed to be correct as a general proposition of law, was not required to be given since the judge fully and accurately explained to the jury the meaning of the injunction and the specific acts that it prohibited. The defendants were entitled to no more. The eighth request was immaterial as the defendants were not charged with violating the injunction by picketing at any place other than at the entrances as defined by the judge. The denial of the ninth request to the effect that picketing did not constitute congregating upon the streets in violation of the injunction was not harmful. The judge instructed the jury as to what congregating meant in the injunction, and he also painstakingly instructed them in terms that could not have been misunderstood by the jury as to the right of the defendants to picket and that the injunction did not abridge that right. The fifteenth request as to peaceful picketing was sufficiently covered by the charge. The defendants were not entitled to have their sixteenth request granted for the request came within the "fragment" rule. *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47. *Whitehouse* v. *Cities Service Oil Co., ante*, 108.

> *Plaintiff's exceptions overruled.*
> *Plaintiff's appeal dismissed.*
> *Defendants' exceptions overruled.*