JACOB F. TIDD *vs.* FIFTY ASSOCIATES & others.

Suffolk.   December 9, 1920. — May 25, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Easement,* Of light and air, Equitable.   *Deed.   Plan.   Prescription.*

At the hearing in the Land Court of a petition for the registration of the title to a parcel of land, it appeared that the owner in 1805 of a parcel of land in Boston bounded by four streets, which included the parcel described in the petition, caused a plan to be made showing the land divided into lots fronting on the streets and abutting in the rear upon a strip of land surrounding a lot called the

"Island," the strip being in no way connected with the streets and being ten feet wide excepting in the rear of lots which abutted upon it westerly of the "Island" and fronted on the first and the fourth of the streets, where it was wider and of irregular shape. Deeds of lots fronting on the streets were made immediately after the plan was constructed, some of which did not refer to the plan, in some of which the lot conveyed was bounded on the " piece of land . . . which is to be kept open for light and air, at least ten feet wide," and in some of which the strip was referred to as " a piece of vacant land . . . (which is to be kept open for light and air forever) . . . agreeable to " the plan. There was nothing to show the purpose for which the lots were to be used and the servient estate was not defined in any deed by which it could be located without the plan. The plan was not recorded until thirty-five years after a number of the deeds were made. The judge found that the evidence did not disclose a general scheme for the use and development of the land shown on the plan by keeping the entire strip around the "Island" open for light and air. *Held*, that it could not be said as a matter of law that the finding was unwarranted.

At the hearing of the petition above described, it appeared that the petitioner claimed title to part of the land described in his petition under a deed of the common predecessor of the parties, which was dated in 1806 and conveyed a lot fronting westerly on the fourth of the streets enclosing the original parcel and bounding in the rear " on a piece of land belonging to . . . [the grantor] which is to be kept open for light and air, at least ten feet wide; " that the lot next northerly from the petitioner's was conveyed by a deed fronting westerly on the fourth and northerly on the first of the four enclosing streets and abutting in the rear on " a piece of vacant land . . . (which is to be kept open for light and air forever);" that the land conveyed to the respondent's predecessor in title fronted northerly on the first of the enclosing streets and abutted in the rear on " a piece of vacant land belonging to . . . [the grantor] (which is to be kept open for light and air forever)." The land in the rear of these three lots was the irregularly shaped portion of the strip westerly of the " Island," which was more than ten feet in width. In other deeds of lots fronting westerly and southerly on the fourth and the third of the enclosing streets, the rear boundary was described as by a strip of land ten feet wide " which is always to be kept open for light and air." In a later deed conveying the "Island," that land was bounded on the irregularly shaped portion of the surrounding strip, which was described as "a piece of vacant land which is always to remain open for the like purposes." The land described in the petition was at no point within ten feet of the land of the respondent. *Held*, that

(1) The description of the servient estate in the respondent's deed did not create an easement of light and air in the whole of the "vacant land," but only one limited to such part of the irregularly shaped portion of the strip abutting the respondent's land in the rear as was reasonably necessary for the use and enjoyment of the easement so granted;

(2) It was not a correct construction of the deed of the respondent's predecessor in title to hold that an easement of light and air over the entire strip of land was granted;

(3) The land of the petitioner, being nowhere within ten feet of that of the respondent, was not subject to any easement in favor of the respondent. Following *Fifty Associates* v. *Tudor*, 6 Gray, 255.

In this Commonwealth no easement of light and air can be created by prescription.

In this Commonwealth an easement of light and air can exist only by express grant, covenant or absolute necessity.

In the case described above, the judge of the Land Court ordered a decrée registering the land of the petitioner subject, as to so much of it as was within ten feet of land of a respondent whose land fronted on the third of the enclosing streets and abutted in the rear on the irregularly shaped portion of the strip surrounding the " Island," to an easement of light and air; and that respondent alleged an exception, claiming an easement over the entire irregularly shaped portion of the strip, his claim being founded upon a deed from the original grantor which bounded the land in the rear " by a strip of land ten feet wide . . . which is always to be kept open for light and air." *Held,* that such respondent's deed created a right by express grant over so much of the petitioner's land as lay within ten feet of the respondent's rear boundary line and that the order for a decrée was correct.

PETITION, filed in the Land Court on December 10, 1919, for the registration of land in Boston described in the petition as follows: " Northwesterly by Central Street twenty and thirty-six one hundredths feet; easterly by land of President and Fellows of Harvard College forty and one one-hundredths feet; southeasterly by land of Fifty Associates thirty-three one-hundredths of a foot; northeasterly by land of Fifty Associates nineteen and forty-one one-hundredths feet; southeasterly by land of Frederick M. Smith seventeen and forty-five one-hundredths feet; southwesterly in part by land of Mary Alison Hill and in part by land of Robert B. Williams, in all twenty-six and fifty-five one-hundredths feet; southeasterly by land of Robert B. Williams seven and twenty-eight one-hundredths feet; and westerly by land of said Robert B. Williams thirty-nine and eighty-eight one-hundredths feet." Accompanying the petition was a plan, material features of which are represented on page 424. The land of the petitioner is shaded.

The petition was heard in the Land Court by *Davis,* J. Material findings by him are described in the opinion. His report contained a statement that in 1841 what was agreed to be a copy of the " Bulfinch plan " was recorded in the registry of deeds. Material features of that plan are represented on page 425.

The judge ordered a decree that the title to the land described in the petition should be registered " subject, as to so much of his land as is within ten feet of the land of the respondents Hill and Williams, to easements for light and air under said deeds from the Broad Street Association to Munroe and another, and to Welsh; " and the respondents Hill and the Fifty Associates alleged exceptions.

The case was argued at the bar in December, 1920, before Rugg, C. J., Braley, De Courcy, Crosby, & Pierce, JJ., and afterwards was submitted on briefs to all the Justices.

*B. E. Eames,* (*W. C. Rice* with him,) for the Fifty Associates.
*C. L. Barlow,* for the respondent Hill.
*F. L. Norton,* for the petitioner.

CROSBY, J.  This is a petition brought in the Land Court for registration of the title to two parcels of land: one fronts on Cen-

Broad            Street

tral Street in Boston and is forty feet deep, with a brick building thereon; the other is irregular in shape, and is in the rear of and joins the front lot. No question is raised by the respondents as to the registration of the front lot, but it is their contention that the rear lot, upon which stands a one-story wood and iron building erected in 1919, is subject to an easement, appurtenant to their respective estates, that it shall always remain open for light and air.  In the Land Court a decree was entered for the petitioner subject only to so much of his rear lot as is within ten feet of land of the respondent Hill (and land of one Williams, another respondent, who is not before this court), to an easement of light and air.  The judge of the Land Court ruled that the respondent the Fifty Associates had no easement in any of the petitioner's land. The case is before this court on exceptions of the respondent the

Fifty Associates to the rulings of the Land Court that the peti-
tioner's rear lot is not incumbered with any easement appurtenant
to the land of the Fifty Associates, and exceptions of the respondent
Hill, to a ruling that the easement appurtenant to the land of the
respondent Hill is limited to so much of the petitioner's rear lot as
is within ten feet of the land of that respondent.

It appears from the record that in 1805 the Broad Street As-
sociation owned the block or parcel of land bounded by Broad,
Central, India and Milk streets, and soon thereafter conveyed by
deed to different grantees lots abutting on those streets together
with the large lot in the centre of the block, which was not directly
bounded on or connected with any street or way and is referred
to as the " Island." These conveyances left in the grantor the
title to a strip of land extending completely around the Island and
situated between the Island and the lots abutting on the streets.
This strip of land, title to which remained in the Broad Street As-
sociation, was ten feet in width in those parts between the Island
and the lots opposite to it on Broad, Milk and India streets; and
the portion lying between the Island and the lots facing on Central
Street was larger in area and of irregular shape. The association
caused a plan of the entire block or parcel to be drawn by Charles
Bulfinch, showing the land between the four streets above named
divided into lots with the Island in the centre and a strip of land
extending around it. This plan apparently was made in 1805.
The first deed from the association was to Whitney and another,
and was recorded on January 16, 1806. In that deed reference is
made to the plan after the description as follows: " according to
a plan thereof, taken by Charles Bulfinch dated Septem$^r$ 5"
1805." There is no evidence that the plan was recorded until
1841.

The compass points as they appear in the original deeds from
the Broad Street Association are changed in the decision of the
Land Court, " south " being changed to " east " and the other
points to correspond therewith. The deed of the petitioner's
front lot from the Broad Street Association to Hills in 1806 de-
scribed it as bounded southerly " on a piece of land belonging to
said Broadstreet Association, which is to be kept open for light and
air, at least ten feet wide, there measuring twenty feet. . . ."
The judge of the Land Court found that the same description in

substance is found in all succeeding deeds in the petitioner's chain of title, including the deed to him from the Stratton estate in 1919. The judge also found that the deed from LeRoy to Stratton in 1842, which included the petitioner's rear lot, " described the front lot as bounding southerly by a strip of land always to be kept open for light and air twenty feet, and then conveyed all right, title and interest ' in and to the strip of land adjoining southerly to the land above described being of said width of twenty feet and about twenty-three feet in length, being the same which has been used as a yard appurtenant to said store since 1812,' and in the deed to the petitioner from the Stratton estate the rear lot is described in the same way."

The judge of the Land Court further found: " The Fifty Associates claim title under a deed from the Broad Street Association to one Davis, dated August 1, 1806, describing a lot of land bounded, (changing the compass points to correspond with the later deeds) northerly on Broad Street Wharf (India Street) twenty feet, easterly on a lot of land contracted to be sold by said association to Richard Hills forty feet, southerly ' on a piece of vacant land belonging to said association (which is to be kept open for light and air forever) there measuring twenty feet ' and westerly on a lot of land also belonging to said association forty feet, ' agreeable to a plan of premises taken by Charles Bulfinch, esquire.' " The judge found that the same description is used throughout the chain of title of the Fifty Associates, except that since 1816 the southerly boundary has been " on a piece of land which is always to remain open for light and air, there measuring twenty feet." Although no record title is shown to the eight foot strip in the rear on which stands the Fifty Associates' one-story wooden building, it is admitted to be in the respondent by adverse possession. The Hill estate is held under a deed from the Broad Street Association to Francis Welch, dated February 28, 1806, in which the land is described as bounding northerly "by a strip of land ten feet wide belonging to said Association which is always to be kept open for light and air twenty feet." The Williams estate, adjoining that of Hill, is held under a deed from the association to Munroe, dated February 28, 1806, in which the land is described as bounding northerly " on other land of said Association, being a strip of land ten feet wide which is always to be kept open for light and air."

It is the contention of the respondents that the Bulfinch plan, and the other plans put in evidence, the deeds from the Broad Street Association (copies of all of which are in evidence), together with all the circumstances, disclose a general scheme for the use and development of the land shown on the Bulfinch plan. The judge of the Land Court, however, found that the evidence did not disclose such a scheme: the Bulfinch plan was not recorded until thirty-five years after the date of the deeds under which the respondents claim title. The servient estate northerly of the Island is defined only as " a piece of vacant land; " there is nothing to show the purpose for which the lots were to be used nor was the servient estate defined in any deed by which it could be located without the plan, which was not recorded until many years after the original deeds from the Broad Street Association of the various lots in the block were given. The deeds from the association do not create uniform restrictions upon the strip, but in some instances the servient estate is limited to ten feet from the rear boundary of the lots conveyed; in the deed under which the petitioner claims title to his front lot it is limited to " at least ten feet wide; " while in deeds under which the Fifty Associates and the President and Fellows of Harvard College claim title the estates are described as bounding on a strip of vacant land to be kept open for light and air. The irregularly shaped strip of land was not connected with any street or way, and it is apparent that it was created solely for the purpose of affording light and air to the lots abutting on it. It is also to be observed that the Bulfinch plan is not referred to in the deeds from the association under which the respondents Hill and Williams respectively claim title. It could have been found that the plan showing the boundaries of some but not all the lots was prepared for the purpose of showing the location and dimensions of the various lots for convenience in making conveyances thereof from the association to purchasers, and was not intended to indicate the uses to which the lots or the reserved space was to be put. It cannot be said that as matter of law the finding of the Land Court that no general scheme is disclosed by the plan and deeds was unwarranted.

The respondent the Fifty Associates contends that, as its front lot is bounded by " a piece of vacant land " belonging to the Broad Street Association " which is to be kept open for light and air for-

ever," a title was created by express grant of an easement in the entire space shown on the Bulfinch plan and immediately in the rear of the lot thereby conveyed. It is the contention of the petitioner that the association intended by its deeds to grant the several lots as shown on the plan, together with an easement over so much of the open land in the rear thereof as was reasonably necessary for light and air, and recited in the other deeds as ten feet; and that it was intended in the Davis deed to limit it to the eight foot strip; and that, when the owners of the dominant estate acquired title to their respective servient strips, the easement merged.

The easements of light and air granted in the deeds to the other respondents are limited to ten feet. It appears that although the ten foot strips shown on the Bulfinch plan are not carried northerly of the northerly end of the Island and do not abut on either the petitioner's lot as sold by the Broad Street Association to Hills, or on the lot of the Fifty Associates as sold by the association to Davis, yet in the deed of the petitioner's lot the easement for light and air is limited to a portion only of the open space in the rear of the Hills and Davis lots "at least ten feet wide," while the easements granted over the ten foot strip are limited to that distance from the rear boundary line of the lots; the portion of the strip which is more than ten feet wide being northerly of the northerly end of the Island upon which the following lots abut: (1) the lot now owned by the petitioner in which the easement is described as "at least ten feet wide;" (2) the lot of the President and Fellows of Harvard College, which is between the petitioner's front lot and that of the Fifty Associates and is bounded in part on "a piece of Vacant land . . . (which is to be kept open for light and air forever);" (3) the lot of the Fifty Associates which is bounded "westerly on a piece of vacant land belonging to said association (which is to be kept open for light and air forever);" (4) the lots of Hill and Williams, each of which is bounded easterly by a strip of land ten feet wide "which is always to be kept open for light and air;" and (5) the parcel described as the Island, bounded "Northerly on a piece of vacant land which is always to remain open for the like purposes." It is seen that none of the deeds by express words create an easement over the servient estate extending more than ten feet from the dominant estate, except those under

which the Fifty Associates and Harvard College claim title, in each of which the easement is described aß over vacant land. In the opinion of a majority of the court this description of the servient estate does not create an easement in the whole of the vacant land, but one that is limited to such part of the so called vacant land as is reasonably necessary for the use and enjoyment of the easement so granted, and that such was the intention of the parties. It is settled in this Commonwealth that no easement in light and air can be created by prescription, *Rogers* v. *Sawin,* 10 Gray, 376, *Carrig* v. *Dee,* 14 Gray, 583, *Richardson* v. *Pond,* 15 Gray, 387, *Brooks* v. *Reynolds,* 106 Mass. 31; such an easement can exist only by express grant, covenant or absolute necessity. *Paine* v. *Boston,* 4 Allen, 168. *Brooks* v. *Reynolds, supra. Salisbury* v. *Andrews,* 128 Mass. 336.

The question then is, what is reasonably necessary for the use and enjoyment of the easement granted to the respondent the Fifty Associates in the vacant land in the rear of its estate? It was held in *Fifty Associates* v. *Tudor,* 6 Gray, 255, a case which in principle cannot be distinguished from the case at bar, that a distance of ten feet from the dividing line between the dominant and servient estates, unless some extraordinary circumstances are shown, is a reasonable distance at which structures excluding light and air may be erected. The judge of the Land Court found that the petitioner's rear lot is at no point within ten feet of land of the respondent the Fifty Associates. Moreover, the land of the latter is separated from the petitioner's front lot by land of the President and Fellows of Harvard College. In the opinion of a majority of the court it is not a correct construction of the deed under which the respondent Fifty Associates claims, to hold that an easement of light and air was granted over the whole strip. *Johnson* v. *Jordan,* 2 Met. 234. *Collier* v. *Pierce,* 7 Gray, 18. All the deeds which convey lots abutting on the petitioner's rear lot, limit the easement to ten feet on the vacant land; if it were intended that the petitioner's entire rear lot was to be kept open for light and air for the benefit of the lot owned by the Fifty Associates, it is difficult to see why the deeds of the lots of Williams and Hill limit the easement to ten feet, and the front lot of the petitioner is limited to an easement of at least ten feet. The respondent Fifty Associates cites and relies on *Brooks* v. *Reynolds, supra,* as a

case similar to the one at bar. In that case the land conveyed was bounded on the end of a "passageway of five feet wide in the clear for light and air," and provided that the "passageway for light and air is to be five feet wide on" the grantee's "line and two feet eight inches on" the lane to which it ran; "and the same is always to be kept open for the purpose aforesaid" and the grantee "his heirs or assigns, to have no other privilege in the same." It was held that the grant was of a right to the open and unobstructed passage of light and air throughout the length of the passageway. In that case the servient estate, unlike that in the present case, was specifically and definitely described. *Salisbury* v. *Andrews, supra.*

The respondent Hill also contends that all the open space northerly of the Island as shown on the Bulfinch plan, which includes the petitioner's rear lot, is subject to an equitable easement appurtenant to her estate that it shall always remain open for light and air. As the deeds and plan do not disclose any general scheme for the use and development of the lots, no easement can be found to be appurtenant to the respondent's land on that ground. Nor is she entitled to any easement in the vacant land, based on the recitals in the deeds from the association of other lots shown on the plan. No easement appurtenant to the respondent's land can be implied from those deeds or in any other way, except by an actual grant or covenant or absolute necessity. *Brooks* v. *Reynolds, supra. Royce* v. *Guggenheim,* 106 Mass. 201. *Keats* v. *Hugo,* 115 Mass. 204. *Case* v. *Minot,* 158 Mass. 577. *Lipsky* v. *Heller,* 199 Mass. 310. *Raynes* v. *Stevens,* 219 Mass. 556, 559. The deed from the association to Welsh dated February 28, 1806, under which this respondent's title is derived, bounded the land conveyed "Eastwardly by a strip of land ten feet wide . . . which is always to be kept open for light and air." This deed, as the judge found, created a right by express grant over so much of the petitioner's land as lies within ten feet of the respondent's rear boundary line. The easement so created is the extent to which the petitioner's land is subjected in favor of this respondent, and the judge rightly so ruled.

It follows that the exceptions of each of the respondents must be overruled.

*So ordered.*