**John HORKY, Appellant,**

v.

**KENTUCKY UTILITIES COMPANY, Appellee.**

Court of Appeals of Kentucky.

June 24, 1960.

Pierce Lively, Nelson D. Rodes, Jr., Danville, for appellant.

Stoll, Keenon & Park, Lexington, Joe G. Davis, Danville, for appellee.

BIRD, Judge.

Kentucky Utilities Company, owner of the dominant estate, sought to enjoin Horky, owner of the servient estate, from erecting a building within the boundary of its easement. High voltage wires purveying electricity to various communities and enterprises were strung throughout the length of the easement. If built according to plans the roof of the building would be approximately 14 feet lower than the wires and 2 to 6 feet from a point directly beneath the closest wire. The trial court enjoined the construction and Horky appeals.

Witnesses for the power company testified that the proposed building would create a fire hazard to its lines which could cause an interruption of service from thirty minutes to three hours and could create a danger to persons and property because of falling wires. These same witnesses testifi-

ed that the loss caused by interrupted service would be irreparable insomuch as the power company cannot collect when the meters do not run, thus forever losing the income for the period of disruption. The testimony of these witnesses is uncontradicted by either expert or layman. The trial court, under this testimony, could and did find as a matter of fact that the construction would create a fire hazard to its lines with possible results as heretofore indicated.

The use of the easement must be as reasonable and as little burdensome to the landowner as the nature and purpose of the easement will permit. Buck Creek R. Co. v. Haws, 253 Ky. 203, 69 S.W.2d 333. But he has no right to use the land subject to the easement in such manner as to interfere with the reasonable and prudent exercise and enjoyment of the easement by its owner. Kentucky & West Virginia Power Co. v. Elkhorn City Land Co., 212 Ky. 624, 279 S.W. 1082.

In 17A Am.Jur., p. 718, it is stated:

"The rights of an easement owner must be measured and defined by the purpose and character of the easement, and the right to use the land remains in the owner of the fee so far as such right is consistent with the purpose and character of the easement. * * *

"It is clear that the relative rights acquired by the one obtaining an easement and those remaining in the owner depend much upon the character and extent of the easement. The right of the easement owner and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both. It is not necessary that the grantor expressly reserve any right which he may exercise consistent with a fair enjoyment of the grant; such rights remain with him."

Though distinguishable on facts the case of Central Kentucky Natural Gas Co. v. Huls, Ky., 241 S.W.2d 986, 987, 28 A.L.R.2d 621, correctly states the principle of law involved here. In that case the trial court enjoined the erection of a building over a pipe line. In sustaining the injunction this Court said:

"Under the provisions of the grant of right of way above it becomes immediately apparent that the dominant and servient owners have correlative rights. The dominant owner has the right to lay the line; he has the right of access to make repairs and properly patrol the line and make such use of easement as is reasonable, but with as little burden on the servient estate as the nature of the easement and the object will permit. It is not meant that he shall have exclusive control of the right of way. On the other hand the servient owner has the right to use the land in any way not inconsistent with the rights granted under the easement or which do not become an encroachment upon or interference with the means and facilities the owner of the easement may lawfully use."

The trial court supported the order of injunction by citing 28 Am.Jur., Section 30, p. 522, in which it is said:

"While injunction will not, as a rule, issue upon mere fear, apprehension, or possibility of injury, this does not mean that the remedy may not be granted to prevent future wrongs. The main virtue of injunction is to anticipate and prevent threatened wrongs which, if committed, a court of law could not adequately remedy. In fact, a remedy which prevents a threatened wrong is better than one which provides for the payment of damages caused thereby. Thus, where the danger is probable and threatened, the party may invoke the aid of equity to prevent it and need not delay his application for injunction until the injury has actually been inflicted. If the inju-

ry is certainly impending, certainly to be expected, that is enough, even though nothing has been done by the defendant for which an action at law could have been brought."

It will be noted that the law is presented here in substantially the same language as that employed by the trial judge in his well-considered opinion.

It appears that the trial court correctly applied the law to the undisputed facts and properly granted the injunction

The judgment is affirmed.