Kenneth **WESTPHAL** et al., Appellants,

v.

**KENTUCKY UTILITIES COMPANY,**
a corporation, Appellee.

Court of Appeals of Kentucky.

Nov. 11, 1960.

As Modified on Denial of Rehearing
March 17, 1961.

Harbison, Kessinger, Lisle & Bush, Lexington, for appellants.

Stoll, Keenon & Park, Lexington, for appellee.

CLAY, Commissioner.

Plaintiff appellee Company has an easement over the property of defendant appellants for the maintenance of high voltage electric transmission lines. In grading an approach to their drive-in restaurant, defendants filled in part of their land so as to reduce the clearance between the ground and the transmission lines approximately 7 feet. In this suit brought by the Company the Chancellor permanently enjoined defendants from using the filled area of their property for the passage of vehicular traffic until and unless the surface is lowered to allow a minimum clearance of 27 feet 7 inches.

In 1925 an easement for the construction and operation of transmission lines over the property involved was granted to the Company, with right of ingress and egress. No reference was made in the grant to the height of the lines. The width of the easement was 75 feet and it was provided no building should be located thereon.

At the time of the grant the property was farm land. About 1950 the "Belt Line" highway, by-passing the City of Lexington, was constructed adjacent thereto. Since that time this vicinity has been substantially developed for commercial purposes. Defendants purchased the property subject to this easement in March 1957 and shortly thereafter constructed a drive-in restaurant thereon. (This building was erected outside the right-of-way.) To provide convenient access to the restaurant for motor vehicle traffic, defendants leveled part of their lot to conform to the grade of the

new highway. This necessitated lowering the surface on one end and filling it in at the other.

The fill is the nub of this controversy. It resulted in raising the level of the ground no more than 7 feet on part of the lot under the transmission lines, thereby reducing the clearance between the ground and the lines by that distance.

In July 1957 the Company by letter advised the defendants in substance that it would require at least a 22 foot clearance underneath its electric lines and offered to raise them if defendants would advance the actual cost ($2,956). When defendants failed to cooperate, this suit was brought to enjoin them from using their property for vehicular traffic unless the "unnatural" surface was lowered to allow a 22 foot clearance. Shortly before the trial the Company amended its complaint, stating that 27 feet 7 inches was the required clearance for safety. There was testimony at the trial supporting the desirability of such clearance.

This case is unique in many respects and requires a careful examination of the correlative rights of the parties. The Company has an easement over defendants' property for the erection and maintenance of electric transmission lines. Defendants have placed no obstruction on the right-of-way which interferes with the electrical transmission, with the Company's complete control of its poles and wires, or with access to its facilities. The case is unlike Central Kentucky Natural Gas Co. v. Huls, Ky., 241 S.W.2d 986, 28 A.L.R.2d 621, wherein the owner of land undertook to erect a building over plaintiff's pipeline, thereby directly interfering with plaintiff's use of its easement. (Other cases cited by the Company involve actual or potential *destruction* of the easement, which is not involved here.)

While there is no direct encroachment upon the Company's rights, it anticipates the possibility that some motor vehicle may cause someone or something to contact the wires, thereby interrupting service and perhaps subjecting the Company to suits for personal injury or property damage. For this reason it claims an exclusive right to the air space beneath its wires as it existed prior to defendants' commercial use of the surface. We are forthwith projected into a twilight zone where the respective rights of the parties may possibly conflict. Is the 7 feet of air space properly an adjunct or appurtenance of the easement or of the surface?

It is certain the Company's interest in the land does not deprive defendants of the right to use their property in a proper manner as they see fit, provided they do not interfere with the *reasonable* use or enjoyment of the easement. Kentucky & West Virginia Power Co. v. Elkhorn City Land Co., 212 Ky. 624, 279 S.W. 1082. Both the Company and the defendants have correlative rights in and over this land, including the air space. As stated in Central Kentucky Natural Gas Co. v. Huls, Ky., 241 S.W.2d 986, 987, 28 A.L.R.2d 621, 625:

> "The dominant owner has the right to lay the line; he has the right to access to make repairs and properly patrol the line and make such use of easement as is reasonable, but *with as little burden on the servient estate as the nature of the easement and the object will permit.* It is not meant that he shall have exclusive control of the right of way. On the other hand the servient owner has the right to use the land in any way not inconsistent with the rights granted under the easement or which do not become an encroachment upon or interference with the means and facilities the owner of the easement may lawfully use." (Our emphasis.)

See also Buck Creek R. Co. v. Haws, 253 Ky. 203, 69 S.W.2d 333.

We have recently considered a problem similar to the one presented in this case. In Horky v. Kentucky Utilities Co., Ky., 336 S.W.2d 588, the landowner proposed to erect a building for commercial pur-

poses almost directly under the plaintiff's electric transmission lines. The clearance was reduced to approximately 14 feet. We upheld the decision of the Chancellor granting plaintiff injunctive relief on the ground that defendant's building would constitute a fire hazard. The only distinction between that case and the present one, if there is a distinction, is a factual one involving a difference of kind and degree in the type of use proposed by the surface owner.

In an attempt to narrow the delicate issue involved, we have examined Youngstown Steel Products Co. v. City of Los Angeles, 38 Cal.2d 407, 240 P.2d 977. In that suit the *landowner sought to compel the utility* to raise its transmission lines. These had been installed and maintained for 17 years 51½ feet above the ground. Plaintiff occupied the land as a storage yard for pipe and in the conduct of its business made use of cranes. It acquired a new crane which could be elevated to a height of 61 feet. This created a hazard to the landowner's business—just the opposite of the claimed effect of the alleged interference in the present case.

It was first decided that the utility had *not* acquired a *prescriptive* right to maintain its lines at the original level. It was held, however, that since plaintiff had acquiesed for 17 years in the maintenance of the power lines at the height of 51½ feet, *plaintiff could not compel the utility* to raise the lines *unless it bore the expense thereof*. This was an oblique recognition that the utility did not have an absolute right to maintain its lines at a given height.

In the foregoing case an attempt was made to analogize the height of the transmission lines with the fixing of boundary limits on a surface right-of-way by acquiescence of the parties. The court did not follow this reasoning to its logical conclusion because it only decided that the plaintiff must bear the expense of raising the wires. (Pending the controversy the parties agreed that the wires be raised and the court was thereby relieved of the difficult duty of determining whether or not the utility, regardless of changing conditions and regardless of the surface owner's willingness to pay the cost of increasing the elevation, could maintain its wires at the height originally fixed.)

In the present case the Company does not advance the argument, and we think wisely so, that the present elevation of its wires had become unalterably fixed as definitive of the scope of the easement. If this were true, then it would have no right to raise them or alter their course as future electrical transmission necessities might require. (There is an indication in the record that due to an increase in the voltage carried by the transmission lines, the height of the wires has changed in recent years.)

■ This brings us back to our starting point. From the very nature of an electrical transmission line and its occupancy of air space rather than surface area, the scope of the easement is somewhat fluid. Neither the rights of the Company nor of the defendants are absolute, but each must be defined in terms of the rights of the other. Our ultimate criterion is therefore the reasonableness of use by each party. For collected cases on the subject, see 6 A.L.R. 2d 205.

Let us assume that when this easement was first granted in 1925 the Company installed an electrical transmission line only 12 feet high. At that time the surface was used for agricultural purposes and the only traffic under the wire was a man with a hoe or a plow, or riding on a flatbed wagon. As time goes by, the tractor comes into use and eventually the farmer is using a sorghum topping or corn stripping machine, which mechanical monsters stand 8 or 10 feet above ground. The height of the line has now become a mutual hazard to both the utility and the landowner.

Considering, in the example given, the use of the property with modern farming devices, we can find nothing unreasonable about it. The parties must be held to have

anticipated normal changes in the use of the surface and changes in the methods of that use, just as they must have anticipated changes in the kind, number, height, and courses of the transmission lines. It is apparent that modern farming devices in our example now invade a portion of the air space which the utility had originally appropriated. This resulted from the orderly development of surface use brought about by changing conditions over which neither party had control. To keep step with progress, the rights of the parties must be analyzed in the light of present day conditions. (This was done in our "strip" and "auger" mining cases. See Buchanan v. Watson, Ky., 290 S.W.2d 40, and Kodak Coal Co. v. Smith, Ky., 338 S.W.2d 699.) On our assumed set of facts, the height of of the line has become an unreasonable invasion of the farmer's right to use the surface.

We think the foregoing illustration is comparable to the situation before us. The increased use of the automobile and the construction of an important highway adjacent to defendants' property may be considered normal developments in our dynamic society which have made appropriate the proper and reasonable use of the surface for the passage of vehicular traffic. In order to utilize the surface for this change in use, defendants find it necessary to level their property and thereby raise the surface of their land a relatively insignificant height. It is true they have invaded 7 feet of air space which the Company claims the right to appropriate. However, assuming the rights of the parties do conflict (which is not clear in this record), we are of the opinion that defendants now have a better right to utilize this air space as appurtenant to a proper use of their land than plaintiff has to appropriate it exclusively as a cushion against a highly speculative hazard.

The distinction between the present case and the Horky case (Horky v. Kentucky Utilities Co., Ky., 336 S.W.2d 588) is one of both kind and degree. There the defendant erected a permanent building which in itself constituted a tangible fire hazard, and invaded a much greater portion of the air space constituting clearance between the wires and the ground. It could be said that the use of the surface was unreasonable and the encroachment on the easement direct, two factors not present here.

In our opinion the Company failed to establish a clear invasion of its rights which would justify the injunctive relief granted. That is the only question presented by this record.

The judgment is reversed for consistent proceedings.