8 Mass. App. Ct. 815                                    815

Western Massachusetts Electric Co. *v.* Sambo's of Massachusetts, Inc.

WESTERN MASSACHUSETTS ELECTRIC CO. *vs.* SAMBO'S
OF MASSACHUSETTS, INC.

Hampden. October 11, 1979. – December 21, 1979.

Present: HALE, C.J., GREANEY, & DREBEN, JJ.

*Easement. Jurisdiction,* Infringement of easement, Conditional relief. *Practice, Civil,* Judgment.

In an action by the holder of an easement for electric transmission lines to enjoin the installation of a parking lot and the laying of underground utilities on the land subject to the easement and to enjoin construction of a building within fifty feet of the boundaries of the easement, the judge's finding that the defendant's proposed use would not interfere with the plaintiff's rights was clearly erroneous. [817-820]

In an action by the holder of an easement for electric transmission lines to enjoin the installation of a parking lot and the laying of underground utilities on the land subject to the easement, although evidence warranted a finding that the defendant's proposed use would interfere with the plaintiff's rights, the plaintiff was not entitled to a blanket injunction but merely to a judgment limiting the proposed uses, mitigating the effect of paving, and providing for other conditional relief. [820-826]

Under a covenant granting a power company the right to erect and maintain two pole lines and one tower line on a strip of land one hundred feet wide and prohibiting the grantor from erecting a building "within fifty feet of either side of said lines," "said lines" referred to the power lines and not to the boundary lines of the easement. [826-829]

CIVIL ACTION commenced in the Superior Court on April 11, 1978.

The case was heard by *Bregianes,* J., a District Court judge sitting under statutory authority.

*Douglas R. Peterson* for the plaintiff.
*Frederick S. Pillsbury* for the defendant.

DREBEN, J. The questions before us relate to the right of the holder of an easement for electric transmission lines to enjoin the installation of a parking lot and the laying of underground utilities on the land subject to the easement (servient land) and also the right of such easement holder to enjoin construction of a building within fifty feet of the boundaries of the easement. The trial judge dismissed the complaint of the easement holder. We reverse.

The easement was granted to the plaintiff's predecessor in 1926 and, as set out in the margin,[1] gave the grantee the right to erect and maintain two lines of poles and one line of towers the location of which would become permanent upon installation. The grantor also agreed not to erect any building "within fifty feet of either side of said lines."

---

[1] The grantee is given "the perpetual right, privilege and easement to erect, maintain, inspect, operate, remove, repair and patrol lines for the transmission of electricity, intelligence and energy, said lines to consist of two lines of either wood or steel poles and one line of towers and underground cables and other supporting structures, including the necessary wires, guys, shores, and fixtures, also the right to enter for the purpose of making surveys, maintaining, inspecting, operating, removing, repairing and renewing said poles, towers, cables, lines, supports, wires and fixtures and of cutting and trimming the brush and trees along the hereinafter described location of said lines, one hundred (100) feet in width, upon the following described parcel of land situated in Chicopee, Hampden County, Massachusetts [description of land is omitted]. Said lines to extend across said premises in an easterly direction from the place where said lines shall enter said premises from right of way granted Amherst Power Company, Nov. 25, 1912 and the exact location of each pole line, tower line and underground cable, all of which shall be erected, laid or installed within the limits of the one hundred feet right of way or easement above referred to, shall be selected by the grantee after its final surveys have been made and when such location has been fixed by the erection, laying or installation of each pole line, tower line and underground cables it shall be deemed to be the permanent location of each line or cable. And I, for myself, my heirs and assigns, covenant and agree with the grantee, its successors and assigns, that no building shall be erected or maintained under or within fifty feet of either side of said lines. Said company agrees by the acceptance of this grant to pay all damages to crops which may be done in the course of the original erection of each line of poles or towers and underground cables."

At the time of the grant, the land was used for agricultural purposes but it now is in an area devoted primarily to industrial and commercial uses.

1. The plaintiff argues that the construction of the parking lot and the laying of underground utilities are inconsistent with its easement. The resolution of these issues has been made more difficult for us because the findings of fact of the trial judge are very sparse and consist primarily of a conclusion that the "proposed construction of a paved parking area and the parking of vehicles on defendant's land is not inconsistent and does not interfere with the plaintiff's express and implied rights under the easement." The only other finding relating to the parking lot was that "[t]he proposed paved parking area provides for an unpaved section immediately surrounding the plaintiff's pole, giving the plaintiff access to said pole for the purpose of maintenance." No findings were made as to the underground utilities.

Fortunately, in this case the record is sufficiently complete to enable us to find facts not expressly found by the judge. *All Stainless, Inc.* v. *Colby,* 364 Mass. 773, 776 (1974). *Zuckerman* v. *Blakeley,* 3 Mass. App. Ct. 685, 686-687 (1975). There is no conflict in the reported testimony, see *Paone* v. *Gerrig,* 362 Mass. 757, 760 (1973), and the evidence relating to the extent of the interference with the plaintiff's easement was undisputed. The testimony on this matter came almost exclusively from one of the plaintiff's witnesses, an engineer named Ashton, and he was extensively cross-examined by counsel for the defendant (Sambo's). Although we have not taken a view, as did the trial judge, see *Keeney* v. *Ciborowski,* 304 Mass. 371, 374 (1939), the evidence includes plans of the proposed site and pictures of the locus in its present condition. Under these circumstances we deem the record sufficient to obviate the need for remanding the matter for additional findings.[2]

[2] Our conclusion that the record is sufficient for us to bring this controversy nearer to an end (see *Butler* v. *East Bridgewater,* 330 Mass.

The general rule in determining whether a given proposed use falls within the activities forbidden to the owner of a servient estate is that such an owner is entitled to make such use of the estate as is consistent with the easement, *J.S. Lang Engr. Co.* v. *Wilkins Potter Press,* 246 Mass. 529, 531 (1923), and cases cited; *Hodgkins* v. *Bianchini,* 323 Mass. 169, 174 (1948), or, as sometimes stated, such an owner may use the land for all purposes which are not inconsistent with the easement, *Ampagoomian* v. *Atamian,* 323 Mass. 319, 322 (1948), or which do not materially interfere with its use. *Merry* v. *Priest,* 276 Mass. 592, 600 (1931). *Carter* v. *Sullivan,* 281 Mass. 217, 225 (1932). As we have recently said, "The owner of the servient estate may not use the property subject to the easement in a way that would lead to a material increase in the cost or inconvenience to the easement holder's exercise of his rights." *Texon, Inc.* v. *Holyoke Mach. Co., ante* 363, 366 (1979).

Here, the evidence introduced by the plaintiff through its engineer, Ashton, establishes that the proposed use by Sambo's of the servient land as a parking lot would increase the hazards and costs to the plaintiff of its operations. There was testimony showing that the paving of the surface around the plaintiff's pole would, by drying the ground and increasing ground resistance, tend to cause the pole, one of the highest structures in the region, to attract lightning. If the pole were hit by lightning, certain porcelain disc insulators might shatter causing debris to fall to the ground, and the line itself, which carries 115 kilovolts, might drop. Lightning also might lead to more service outages, which might necessitate the installation of an underground counterpoise (ground) wire throughout the length of the transmission

33, 38-40 [1953]) is based on the assumption that the trial judge did not question the truthfulness of Ashton's testimony. If, however, that assumption is incorrect, the judge should, on remand, make detailed findings of fact to which he should apply the legal principles set forth herein.

lines. While Mr. Ashton was unable to quantify the higher risk of lightning, he was confident that ground resistance would be increased. On cross-examination he testified that the risk would be reduced if a twenty-five foot radius around the pole remained unpaved. He also testified that there were very few instances in the past when the facilities on the servient land needed repairs.

Mr. Ashton also testified that the parking of cars within the easement area would not only increase the risk of injury, but would also directly interfere with the operation of equipment and crews needed to make repairs. If the area were paved, the costs of installing future underground lines would be higher because the pavement would have to be ripped up. He pointed out that the installation of underground water, sewer, gas and electric conduits at random depths and locations within the right of way would seriously limit the plaintiff's ability in the future to lay underground cables and wires. However, on cross-examination, he indicated that the plaintiff's objections would be significantly less if the underground utility conduits were grouped together. Sambo's construction manager testified that the defendant would be willing to consolidate the utility conduits into two groups so that utilities within each group would be at the same depth in the ground.

It is apparent from this evidence that the use of the land as a parking lot and the installation of underground utilities by Sambo's will render the plaintiff's operation less convenient and more costly. Its potential liability to third persons for personal and property damage will be greater (see *Dunn* v. *Pacific Gas & Elec. Co.,* 43 Cal.2d 265, 272, 275 [1954]); any future underground installation will be more expensive because of the paving; its access to its pole and wires for maintenance will be limited by the parking of cars and by vehicular and pedestrian traffic; it may be required to lay a counterpoise wire; and its ability to lay underground wires will be made more difficult if Sambo's is permitted to lay its underground

utilities in a random uncontrolled manner. Under these circumstances we believe that the trial judge's finding that the defendant's proposed use does not interfere with the plaintiff's rights is clearly erroneous, and that the judge erred in dismissing the plaintiff's action.

Although we conclude that the defendant's proposed activities, if unlimited, would materially interfere with the easement, the plaintiff is not necessarily entitled to a blanket injunction precluding all such activities. The scope of relief to be granted requires a closer examination of the rights held by the plaintiff under its easement and how those rights are to be ascertained. These rights also establish the correlative rights of the owner of the servient estate and hence determine whether a particular use by the servient owner is an inconsistent or materially interfering one.

Here, the easement is limited in purpose and scope.[3] It is for transmission lines and the right to repair and maintain them. The easement does not authorize the plaintiff to install as many structures as it chooses, but permits only a specific number of lines or towers, and once the locations of these are fixed they become permanent. The power company is also obligated to pay for damage to crops caused by the original installation of poles or cables.

Other than the provisions requiring the easement owner to pay for crop damage, which is, of course, a recognition that the rights in the surface are to remain in the servient owner at least for agricultural purposes, the easement is silent as to other rights of the parties in the surface of the property. Compare *Hartford Elec. Light Co.* v. *Levitz,* 173 Conn. 15, 17-18 (1977) (parking specifically excluded without written permission from the holder of the easement); *J.S. Lang Engr. Co.* v. *Wilkins Potter Press,* 246 Mass. at 532. In some cases where an easement is silent as to a particular use, the use itself is so clearly inconsistent with the easement that a

---

[3] See n.1.

general proscription evolves. Thus, courts have usually held, regardless of the particular language of the grant, that constructing or placing a building under high voltage electric lines is inconsistent with the easement of a power company because of increased danger, increased difficulty of repair, or both. *Collins* v. *Alabama Power Co.,* 214 Ala. 643, 645 (1926). *Snider* v. *Alabama Power Co.,* 346 So.2d 946, 949-950 (Ala. 1977). *Pacific Gas & Elec. Co.* v. *Minnette,* 115 Cal. App.2d 698, 706 (1953). *Georgia Power Co.* v. *Sullivan,* 217 Ga. 699, 702-703 (1962). *Central Ky. Natural Gas Co.* v. *Huls,* 241 S.W.2d 986, 987 (Ky. 1951). *Horky* v. *Kentucky Util. Co.,* 336 S.W.2d 588, 589-590 (Ky. 1960). *Missouri Power & Light Co.* v. *Barnett,* 354 S.W.2d 873, 878 (Mo. 1962). *Carolina Power & Light Co.* v. *Bowman,* 229 N.C. 682, 689 (1949). *Kesterson* v. *California-Or. Power Co.,* 114 Or. 22, 31 (1924) (lumber piled on the premises in fifteen foot high piles held inconsistent). *Seattle* v. *Nazarenus,* 60 Wash. 2d 657, 666-667 (1962). But see *United States* v. *Cross,* 477 F.2d 317 (10th Cir. 1973), where residential use was permitted on the ground that this was the intent of the parties as shown by their conduct. See generally Annot., 6 A.L.R.2d 205 (1949).

It is not, however, clear that parking facilities will materially interfere with transmission lines, and indeed, the cases provide no uniform rule. No Massachusetts cases involving the right of the holder of an easement for electric transmission lines to preclude parking have been brought to our attention, although there is a case, *Metropolitan Dist. Commn.* v. *Plotnick,* 354 Mass. 1 (1968), where the holder of a pipeline easement obtained an injunction against filling and blacktopping of the servient estate. That case is, however, not controlling as the easement expressly required permission of the easement holder before any fill or other material could be deposited on the land. *Id.* at 2.

A case more apposite because the easement was silent as to the parking is *Los Angeles* v. *Ingersoll-Rand Co.,*

822                                    8 Mass. App. Ct. 815

Western Massachusetts Electric Co. *v.* Sambo's of Massachusetts, Inc.

57 Cal. App. 3d 889, 893 (1976). There, the court, on the basis of a finding by the trial court that limited parking was not an unreasonable interference, permitted temporary parking for employees pursuant to an injunction which required that keys to all cars were to be kept in the servient owner's office, that such owner was to maintain equipment sufficient to move any locked automobiles from the area of the easement, and that such owner was also to enforce a restriction against customer parking. *Id.* at 895. In that case, as in the case at bar, the area changed from agricultural to industrial and commercial. The court quoted with approval Comment a of § 486 [4] of the Restatement of Property (1944) and held that such limited parking was appropriate since all uses of the property "not unreasonable in light of the interest granted" are reserved to the servient owner. *Id.* at 894.[5] Another similar case is *Westphal* v. *Kentucky Util. Co.,* 343 S.W.2d 367 (Ky. 1960), where the holder of an easement tried to enjoin the servient owner from filling and raising the land under transmission lines by seven feet, thereby reducing the clearance between the ground and the wires. Evidence at trial indicated the desirability of the clearance requirement sought by the company. Although the trial court enjoined the filling, the Court of

[4] "*Uses not inconsistent with conveyance.* So far as the language of the conveyance creating an easement precisely defines the privileges of the owner of it, the privileges of use of the owner of the servient tenement are also precisely defined. As the precision of definition decreases, the application of the principle that the owner of the easement and the possessor of the servient tenement must be reasonable in the exercise of their respective privileges becomes more pronounced. Under this principle, the privilege of use of the possessor of the servient tenement may vary as the respective needs of himself and the owner of the easement vary."

[5] Two other California cases, each relying on findings of the trial court, involved similar questions. One, *Los Angeles* v. *Howard,* 244 Cal. App. 2d 538 (1966), denied an injunction against parking to the holder of an easement for electrical transmission lines and the other, *Los Angeles* v. *Igna,* 208 Cal. App. 2d 338 (1962), granted such an injunction.

Appeals reversed, holding that the rights of neither the dominant nor the servient owner were absolute, and that each must be defined in terms of the rights of the other. It applied as its criterion "the reasonableness of use by each party," *id.* at 370, and, looking at the rights of each in the light of then current conditions, permitted the fill.

An analogy may also be drawn to the cases involving easements where a right of way over the surface is given. There, the question presented is often whether the servient owner may build over the surface or use the ground underneath it. The general rule in those cases is that absent the showing of a contrary intent, or other special circumstances, the owner of the servient land may build over it even if building renders the way less convenient by being covered or darkened, unless it is so darkened as to render it unfit for passage. *Atkins* v. *Bordman,* 2 Met. 457, 475 (1841). *Healey* v. *Smith Carriage Co.,* 265 Mass. 203, 208-209 (1928). *Sargeant* v. *Traverse Bldg. Trust,* 267 Mass. 490, 494-495 (1929). *Novello* v. *Caprigno,* 276 Mass. 193, 196-197 (1931). *Cape Cod Hosp., Inc.* v. *Cape Cod Medical Center, Inc.,* 7 Mass. App. Ct. 873 (1979). The easement holder has the burden of showing that he has the right that the way shall be kept open to the sky for light and air. *Duncan* v. *Goldthwait,* 216 Mass. 402, 404 (1914). Similarly, where a drainage easement is given, the servient owner is not precluded from subterranean construction. *Kendall* v. *Hardy,* 208 Mass. 20, 28-29 (1911). *New York Cent. R.R.* v. *Ayer,* 239 Mass. 70, 78-79 (1921). The reason for this rule, as Chief Justice Shaw wrote in 1841, is that "[t]he law, carrying into effect the intention of the parties, does not intend to restrict the right of ownership of the real estate subjected, further than is necessary to give full effect to the easement; and public policy requires, as well in cities as elsewhere, that an owner of real estate should be allowed to make all the improvements upon it, which can be made consistently with the just rights of others." *Atkins* v. *Bordman, supra* at 471.

As suggested in *Westphal* v. *Kentucky Util. Co.,* 343 S.W.2d at 370, the nature of an electrical transmission line and its occupancy of air space, rather than surface area, gives the holder of a power easement only limited rights over the surface of the servient land. By analogy to the right of way cases, we hold that the plaintiff is not entitled to a blanket injunction against paving and using the land subject to the easement as a parking lot. Unlike the holder of an easement of travel, the plaintiff does not have extensive rights over the surface of the way. Compare *New York Cent. R.R.* v. *Ayer,* 242 Mass. 69, 74-75 (1922); *Delconte* v. *Salloum,* 336 Mass. 184, 189 (1957).

The scope of the relief to be given the plaintiff still remains to be determined. Since the easement itself provides no additional guidelines, we think the relief granted should be governed by the principles expressed in the Restatement of Property § 486, Comment a, set forth in the margin *supra* at note 4. See also § 481 and Comment a; § 485 and Comment c. Those principles are consistent with the rules of construction applicable in other situations where the easement use is not clearly defined. In *Pratt* v. *Sanger,* 4 Gray 84, 88 (1855), where a grantee was given an easement over the defendant's land to the latter's well, but the way was not defined in the deed, the court said, "The rule of law in such cases is well settled. The grantee has a right to such way as is reasonably necessary and convenient for the purposes for which it is granted. He cannot claim, as a matter of right, to go in the most direct line to a given point, without regard to other circumstances affecting the rights and interest of the owner of the premises; nor can he be compelled by the mere caprice of the owner to go by a circuitous and indirect route." Courts in such cases "will determine what is reasonable under the conditions disclosed, and locate the way accordingly." *McKenney* v. *McKenney,* 216 Mass. 248, 251 (1913). *Tidd* v. *Fifty Associates,* 238 Mass. 421, 430 (1921). *Highland Club of West Roxbury* v. *John Hancock Mut. Life Ins. Co.,* 327 Mass. 711, 715 (1951).

Similarly, in determining whether the defendant owner of the servient estate could place a gate over a right of way held by the plaintiff, the court in *Blais* v. *Clare*, 207 Mass. 67, 69-70 (1910), said the question is "[w]hat is reasonable in the use of the property of the respective parties. The plaintiff has a right to use the way in a reasonable manner, having regard to the correlative right of the defendant to use her property in a reasonable way, in reference not only to her own benefit and convenience, but also to the benefit and convenience of the plaintiff." There are numerous other cases which refer to or imply reasonableness in determining what is a permitted use for either the easement holder or the owner of the servient estate. E.g., *Perley* v. *Cambridge*, 220 Mass. 507, 513 (1915); *New York Cent. R.R.* v. *Ayer*, 242 Mass. at 76; *J.S. Lang Engr. Co.* v. *Wilkins Potter Press*, 246 Mass. at 532; *Guillet* v. *Livernois*, 297 Mass. 337, 341 (1937); *Swenson* v. *Marino*, 306 Mass. 582, 585-586 (1940); *Swan* v. *Newton*, 339 Mass. 146, 150 (1959) (cites Restatement of Property §§ 481 and 486); *Tehan* v. *Security Natl. Bank*, 340 Mass. 176, 186, 187 (1959); *Michaelson* v. *Nemetz*, 4 Mass. App. Ct. 806 (1976). See *First Natl. Bank* v. *Konner*, 373 Mass. 463, 470 (1977) (cites Restatement of Property § 486). See also 2 American Law of Property § 8.66 (A.J. Casner ed. 1952).

Applying the standard of reasonableness to the exercise of the respective privileges of both the dominant and servient owners, and taking into account the evidence that many of the difficulties raised by the plaintiff can be mitigated by appropriate measures, we hold that while the plaintiff is not entitled to a blanket injunction against the use of the property as a parking lot, it is entitled to a judgment, to be framed in the Superior Court, which limits the proposed uses, mitigates the effect of paving, and provides for conditional relief as more fully described in part 3 below. See *Tehan* v. *Security Natl. Bank*, 340 Mass. at 184, 186, 187; *United States* v. *Sea Gate, Inc.*, 397 F. Supp. 1351, 1358, 1359 (D.N.C. 1975);

*Los Angeles* v. *Ingersoll-Rand Co.,* 57 Cal. App. 3d at
893, 895. Compare *Delconte* v. *Salloum,* 336 Mass. at
189, but see opinion of Whittemore, J., at 190-191, con-
curred in by two other judges.

2. The plaintiff also claims that Sambo's should be en-
joined from constructing a building within fifty feet of
the boundary line of the easement. The grant gave the
power company the right to erect and maintain two pole
lines and one tower line on a strip of land 100 feet wide.
The grantor also covenanted that he would not erect a
building "within fifty feet of either side of said lines." See
note 1, *supra.*

In 1931 or 1932 a line of towers was constructed in an
easterly direction along the center of the easement,
which remained in place until 1975 (line A on the dia-
gram accompanying this opinion), when a steel pole line
(line B on the diagram) was constructed about fifteen
feet to the north of the center line. Only one pole line has
been erected although the easement specifically allows
two lines, and only one pole is located on the servient
land. In 1978, Sambo's purchased a parcel of real estate
which includes the area subject to the easement. It in-
tends to construct a restaurant on the land north of the
easement in a location 61.2 feet from the presently exist-
ing pole line and 26.2 feet from the boundary line of the
easement, as indicated on the diagram.

The plaintiff claims that the covenant of the grantor
not to build "within fifty feet of either side of said lines"
means within fifty feet of the boundary lines of the ease-
ment. It argues that it may, although it has no present
plans to do so, build a second line on the northerly
boundary line of the easement, and that Sambo's pro-
posed restaurant would be less than fifty feet from that
line and hence would violate the easement. We agree
with the trial judge that the proposed building is not
proscribed.

We reject the plaintiff's definition of the term "lines."
The provision imposing the restriction on the grantor

Western Massachusetts Electric Co. *v.* Sambo's of Massachusetts, Inc.

uses the term "*said* lines,"[6] thus referring to "lines" mentioned earlier. The previous reference is to power lines which have been installed and not to boundary lines. This interpretation is consistent with the easement. The grantee is not given a right to a clear strip fifty feet on either side of the easement area. It is given a clear strip fifty feet on either side of installed power lines. Moreover, the power company does not have the right to locate and relocate its lines throughout the easement area. On the contrary, once a line has been installed, its location becomes permanent.

In determining the rights of the parties we construe the easement and the restriction according to the same principles which were discussed in part 1 of this opinion. Although the plaintiff had the right by the terms of the easement to locate the power lines "after [making] its final surveys," the easement is silent as to when such surveys are to take place. Here, more than fifty[7] years have elapsed since the grant of the easement, and the grantee has only located one line. In view of the limited nature of the grant, we think it unreasonable for the power company to be able, by postponing the location of its second line, to preclude indefinitely all use of the fifty foot strip of adjacent land. Other convenient locations are available for construction of the second power line if another line should become desirable. As can be seen in the diagram, there is a sixty-five foot open area on the southerly side of the existing pole line which can be built upon without unreasonably burdening the adjacent land.

---

[6] See note 1, *supra.*

[7] In reaching this conclusion we do not consider the effect of G. L. c. 184, §§ 26-30, as the parties have made no reference to these provisions. See also *Labounty* v. *Vickers,* 352 Mass. 337, 347-348 (1967). These provisions presumably operate as a statute of limitations. *Opinion of the Justices,* 369 Mass. 979, 987 (1975). See Mass.R.Civ.P. 8(c), 365 Mass. 750 (1974). However, we note that the result reached is consistent with the legislative policy expressed in those provisions. See *Berman & Sons, Inc.* v. *Jefferson,* 379 Mass. 196, 203-205 (1979).

See *McKenney* v. *McKenney*, 216 Mass. at 251. See also *Old Colony St. Ry.* v. *Phillips*, 207 Mass. 174, 181 (1911). Under these circumstances, we hold that the plaintiff may not, on the mere speculation that it may some day wish to locate the line on the northern boundary of the easement, indefinitely preclude use of the entire fifty foot strip north of the right of way. Cf. *Kesseler* v. *Bowditch*, 223 Mass. 265, 269, 270 (1916). Sambo's, of course, may not build within fifty feet of the wires comprising parts of the existing power line.

3. The case is remanded to the Superior Court for the framing of a judgment in accordance with the considerations expressed in parts 1 and 2 hereof as more fully described below.

We leave to the trial judge the question whether any evidence should be taken in connection with the judgment and also whether any additional matters not herein covered but consistent with the relief mandated should also be heard.

(a) In view of the limited rights of the plaintiff over the surface of the servient land, we have indicated our unwillingness to preclude all paving of the area subject to the easement by the defendant. Although there was evidence that paving would increase the probability of the pole being hit by lightning, the testimony also indicated that the risk would be considerably reduced if a twenty-five foot radius around the pole remained unpaved. The judgment should permit paving except for such twenty-five foot radius.[8]

(b) There was evidence that the paving of the lot would cause the plaintiff additional expense. The judgment should, so far as practical, condition paving of the lot on the defendant's assuming the cost of these expenses. See *New York Cent. R.R.* v. *Ayer*, 242 Mass.

---

[8] Although the trial judge found that the proposed plan provides for an unpaved section, the plaintiff is entitled to the protection of a judgment to this effect.

at 75; *Youngstown Steel Prod. Co.* v. *Los Angeles,* 38 Cal. 2d 407, 410 (1952). Possible solutions are for the judgment to require the defendant to surface the parking area with crushed stone rather than paving, or to provide the plaintiff with a document suitable for recording under which the defendant and its successors in title: (i) agree to pay the increased costs to the plaintiff, by reason of the lot being paved, of placing underground cables or installing other items permitted by the easement; and (ii) acknowledge that the plaintiff has no duty to incur additional costs of repair to the property by reason of such paving.

(c) The judgment should condition the defendant's use of the premises as a parking lot on the defendant's taking precautions so as to ensure, in so far as practical, that emergency repairs can be made at all times. This right is included within the easement grant, if not expressly, by reasonable implication. *Sullivan* v. *Donohoe,* 287 Mass. 265, 267 (1934). *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.,* 298 Mass. 513, 514 (1937). Whether the defendant is required to maintain facilities for the removal of all cars located on the lot as provided in *Los Angeles* v. *Ingersoll-Rand Co., supra* at 895, or whether access for such repairs can be provided by leaving certain lanes of traffic free, or by some other method, can best be determined by the trial judge. While we recognize that the plaintiff has an increased potential liability to persons and property by reason of the defendant's use of the area as a parking lot, we determine such use to be permissible despite its effect in light of the correlative rights of both parties, subject to such restrictions, if any, deemed appropriate by the trial judge.

(d) Although the defendant has the right to lay underground utilities, *Perley* v. *Cambridge,* 220 Mass. at 513, such laying should not unreasonably interfere with the right of the plaintiff to lay its second line or its own cables, wires or other permitted items in the future. The plaintiff testified that its objections would be reduced if

the utilities were placed in two groups, and the defend-
ant showed a willingness to group them. The judgment
should require the defendant to place its utilities in such
groups.

(e) The judgment should deny the plaintiff relief in so
far as it seeks to enjoin the defendant from building in a
location north of the right of way which is more than fif-
ty feet from the plaintiff's power line.

4. In view of our analysis of the scope of the easement,
we do not find it necessary to discuss the question of
nuisance.

The judgment is reversed and the case is remanded to
the Superior Court for further proceedings and the entry
of judgment consistent with this opinion.

*So ordered.*