**Thomas JACKSON, et al**
**vs.**
**Fred WETZEL, et al**

**No. 28405-S**

Land Court Division, Suffolk, ss.
Trial Court of the
Commonwealth of Massachusetts

**April 13, 1982**

**Robert L. Marzelli,** counsel for plaintiff.
**Mario Alfieri,** counsel for defendant.

## DECISION

Plaintiffs bring this action "demanding" that the court determine whether a valid easement exists on plaintiffs' Lot 105 for the benefit of defendants' Lot 106, and if so what the nature and characteristics of the easement are, whether either party may erect a fence along the boundary of the two lots or otherwise impede traffic, what the phrase "mutually maintained" means and order that both Certificates of Title be amended to reflect the judgment of the court.

By way of answer defendants assert that they have an established right-of-way over the area in question; that plaintiffs trespassed on their property by erecting a barrier fence across their driveway that constitutes trespass and nuisance. The defendants demand that the plaintiffs' action be dismissed, the fence removed and that damages sustained by them and costs and attorneys' fees be awarded to them. Their counterclaim alleging that this case was frivolous and brought only to affect three other pending cases in the Superior Court was waived by them.

Trial was held on November 20, 1981. A stenographer was sworn to record and transcribe the testimony in the case. Four witnesses testified and nine exhibits were introduced into evidence and are incorporated herein for the purpose of any appeal.

On all the evidence the court finds and rules as follows:

1. By deed (Exhibit 2) dated July 21, 1972, Southeastern Properties, Inc. conveyed a parcel of land in Marshfield, Massachusetts shown as Lot 105 Meeting House Lane (See Appendix A)[1] to Peter P. Brown, Jr. and Jessie Ann Brown. Said deed stated that the parcel was

> "Subject to and together with a right of way over a portion of Lot 105 shown as a twenty-foot drainage easement for all purposes for which roadways are commonly used in the Town of Marshfield for the benefit of Lot 106. Said right of way is to be mutually maintained by Lots 105 and 106."

2. By deed (Exhibit 8) dated August 29, 1972 and filed as Document No. 145155,[2] Southeastern Properties, Inc. conveyed Lot 106, to Country Shore Homes, Inc. Said deed stated that

> "This conveyance is made subject to and together with a right of way over a portion of Lot 105 shown as a twenty-foot drainage easement for all purposes for which roadways are commonly used in the Town of Marshfield, for the benefit of Lot 106. Said right of way is to be mutually maintained by Lots 105 and 106."

3. During 1973 a blacktop driveway 90' by 9' was constructed within the drainage easement as shown on Appendix A. Midway down the driveway it branches off into a "T" with one arm extending on to the Wetzels' property and the other arm on to the Jacksons' property. It

1. Appendix A is a copy of Exhibit 2, a plan numbered 28405E Sheet 2 of 2 drawn by Robert C. Bailey, Surveyor and dated June 28, 1967.
2. All references to instruments are to instruments located at the Plymouth County Registry of Deeds unless otherwise indicated.

appears that this driveway was put in prior to plaintiffs and defendants acquiring title.

4. On August 17, 1973, as evidenced by Transfer Certificate of Title No. 51774, registered in Book 258, Page 174, Fred J. Wetzel and Hope E. Wetzel become the owners of Lot 106, (See Appendix A), subject to and with the benefit of the right-of-way and easement set forth in paragraph 2 herein. (Exhibit 7)

5. In June of 1976, as evidenced by Transfer Certificate of Title No. 56440, registered in Book 282, Page 40, Thomas R. and Janice Jackson became the owners of Lot 105, (See Appendix A), subject to and with the benefit of the right-of-way and easement set forth in paragraph 1 herein. (Exhibit 1)

6. Mr. Jackson testified that he encountered problems with the Wetzels' use of the driveway from the first day the Jacksons moved in. There was testimony that on numerous occasions the Wetzels caused the driveway and especially the "T" portion to be blocked with their own cars or the cars of their company, impeding the Jacksons' entrance and egress. Mr. Jackson also testified that he completely maintained the driveway himself, removing the snow, ice and pine needles. He also repaired the way with cement on six occasions. He stated that although he requested Mr. Wetzel's help with the maintenance of the driveway, it was refused. Mr. Jackson also testified that the Wetzels gave people permission to walk and ride horses up the driveway to get to a pond located behind the Wetzel house.

7. Mr. Wetzel contradicted Mr. Jackson, testifying that he shoveled the snow approximately 30 percent of the time and that Mr. Jackson did it the other 70 percent. He added that he did not use the way with the frequency that the Jacksons used it. He denied that he gave people permission to use the drive and that he ever blocked the way.

8. Sometime between July and October of 1979, Mr. Jackson had three timbers placed across the T arm extending from the driveway into the Wetzel property, totally blocking the Wetzels from the driveway itself.

9. During the latter part of September, 1979, Mr. Jackson had a split rail fence approximately 3 and 1/2 to 4 feet high installed. This new fence continued a section of fence which had been erected by the Wetzels inside the property line of their Lot 106, starting at Meeting House Lane and continuing upward along the edge of their boundary for 64 feet. The new fence was erected by Jackson along the southeasterly line of the Wetzels' Lot 106 for an additional 68 feet, blocking the T arm of the driveway that extends onto the Wetzel property. This fence encroached on the Wetzels' land by 1 foot, 2 inches at its widest point and 2 inches at its narrowest point and extended to within 30' of the back lot line. Mr. Jackson testified that he had the fence installed to protect himself from liability in the event that one of the Wetzels' invitees was injured on the property.

10. At some time shortly after the fence went up Mr. Jackson spoke with Mr. Wetzel about paying for half of the driveway to be resurfaced. He testified that he asked Mr. Wetzel for $750, because the work had to be done and he did not want a new buyer to have to pay for it. Mr. Wetzel testified that he refused to pay the $750 because Mr. Jackson had caused his driveway to be blocked.

11. On April 17, 1980, plaintiff Thomas Jackson brought a small claims action in the Plymouth District Court for $750 against defendant Frederick Wetzel. The claim stated that

"for 7 years the Wetzels have used my driveway . . . At no time during this period did the Wetzels make any effort nor contribute in any way to its repair or maintenance . . ."

A judgment for the defendants was entered on October 7, 1980.

12. At some time during September or October 1979, the Wetzels put their house up for sale. Later a purchase and sales agreement was signed by them and a

prospective purchaser.

Mr. Jackson admitted that he sent a letter to the Wetzels' real estate broker informing him of the dispute over the driveway, and that he "did not think he should start a relationship with a new person having them owe me money to repave the driveway . . ." The sale of that property was never consummated, leading to three actions currently pending in the Superior Court by and between the parties herein and third parties.

13. The defendants Wetzel moved away and are presently renting the house on Lot 106. The tenants do not use the driveway at the Wetzels' request.

I. Does a valid easement exist?

The court answers this in the affirmative.

In the instant case there is an easement by grant created by the express language contained in both the plaintiffs' and defendants' Certificates of Title. (See paragraphs 3 and 4 herein). The language of the grant is clear and unambiguous. The Certificates of Title not only create the easement but refer to the subdivision plan, Appendix A, which shows its location. As the plan was referred to in the Certificates it has 'the effect of an express grant. **Walter Kassuba Realty Co. v. Akeson,** 359 Mass. 725 (1971).

II. Must the plaintiffs and the defendants mutually maintain the easement?

The court answers this in the affirmative.

The general rule regarding maintenance of an easement is that the dominant estate, in this case the defendants Wetzels, are responsible for keeping the easement in its day-to-day repair. **Texon, Inc. v. Holyoke Machine Company,** Mass. App. Ct. (1979)[3]. In the instant case, however, the grants expressly state that the easement will be mutually maintained by both parties. (See paragraphs 1 and 2 herein). This language is not ambiguous and therefore means exactly what it says. Each party is equally responsible for maintaining the easement. Exactly how the parties intend to do this is for them to determine, but in any event it must be reasonably done. There is no requirement that the reservation of a right of use set forth methods of resolving disputes which might arise between the parties. **New York Central R.R. v. Ayer,** 242 Mass. 69 (1922). Any disputes that cannot be resolved by the parties may have to be resolved by the courts when and if they arise. The present dispute over maintenance of the way would appear to have been decided by the Plymouth District Court—see paragraph 12 herein.

III. May the plaintiffs Jacksons erect a fence along the defendants' boundary line?

The answer to this is no.

The plaintiffs have absolutely no right to erect a fence either on or over the defendants' boundary line of Lot 106, as such a fence must interfere with the defendants' use of the right-of-way. There is evidence and the court finds that a fence was actually erected not on the boundary but over on the defendants' side of the boundary line. (See paragraph 10 herein). This is clearly a trespass. As the defendants have a 20-foot right-of-way, plaintiffs may erect a fence only on their side of the southeasterly line of the way. (See Appendix A) The fact that plaintiffs erected the fence on defendants' property and in addition cut off their easement is an interference with the plaintiffs' property rights. **Texon, Inc. v. Holyoke Machine Corp., supra,** (1979). The plaintiffs must refrain from any activity which will interfere with the defendants' right of use. **Cape Cod Hospital, Inc. v. Cape Cod Medical Center, Inc.,** 1979 Mass. App. Ct. 873.

The Court thus rules that since the fence was erected on the defendants' land there has been and is a trespass.

---

3. Mass. App. Ct. Adv. Sh. (1979) 1853.

The court orders that the plaintiffs remove the fence and in no way further interfere with defendants' right of use of the way. The court will not award nominal damages, as it is requiring the plaintiffs to remove the fence. See, **Blood v. Cohen,** 330 Mass. 385 (1953).

The defendants Wetzel have waived their counterclaim, involving as it does in part claims set forth in paragraph 12 herein and others in litigation between the parties herein and third parties in the Superior Court.

The plaintiffs have submitted 6 requests for findings of fact. Those numbered 1, 2, 4, 6 are allowed; number 3 is denied. Plaintiffs have also submitted 3 requests for rulings of law; numbers 1 and 3 are allowed; number 2 is denied.

Defendants have submitted 17 requests for findings of fact; those numbered 1-12 and 14, 15 and 17 are allowed; numbers 13 and 16 are denied. Defendants have also submitted 11 requests for rulings of law; those numbered 1-3, 6 and 8-11 are allowed; numbers 4, 5 and 7 are denied.

Judgment accordingly.

**William I. Randall, Chief Justice**